Carter v. Butler.

## J. W. CARTER, Trustee, v. JAMES J. BUTLER, Executor, et al., Appellants.

In Banc, March 3, 1915.

1. **PLEADING: Failure to State Cause of Action: Point Raised on Appeal.** While a petition may be attacked at any time on the ground that it fails to state a cause of action, yet when the question is raised in due time by motion or answer, so as to facilitate and simplify the trial of the real issues, it will be received with greater favor, and permitted a wider field of operation, than when interposed after the labor, expense and delay of a trial.

2. ———: ———: ———: **Action on Note: Plaintiff's Right to Sue: Trustee for Collection.** In an action on a note, a petition which states that the note was indorsed for collection to a bank; that later the payees, W and L, transferred and assigned an interest in the note to the G. Company; that the note was placed in the plaintiff's hands and he was authorized and directed to collect it and pay to the. G. Company its interest therein, states facts showing sufficient title in the plaintiff to maintain the suit as trustee for W, L, and the G. Company, the question not having been raised by motion or answer in the trial court.

3. **NEGOTIABLE INSTRUMENTS: Transfer: Indorsement for Collection: Suit by Trustee Appointed by Payees.** Section

10001, R. S. 1909, providing that an instrument is negotiated when it is transferred so as to constitute the transferee the holder—if payable to bearer, by delivery, if payable to order, by indorsement followed by delivery—and Sec. 10004, declaring that a special indorsement specifies the person to whom or to whose order the instrument is to be payable, and the indorsement of such indorsee is necessary to the further negotiation of the instrument, do not attempt to provide an exclusive method for the transfer of such instruments, but apply only to such transfers as shall preserve "negotiability," and accordingly where the payees of a note transferred it by indorsement to a bank for collection and that bank indorsed it to another for the same purpose (the banks gaining thereby no interest in the instrument except that of collecting it and accounting for the proceeds), one whom said payees have by written contract appointed their trustee for collection may sue upon the note although it bears upon its back the indorsement mentioned.

4. ————: ————: ————: ————: Subsequent Indorsees. If any person who has indorsed a bill of exchange or note to another, whether for value or for purpose of collection, shall come into the possession thereof again, he shall be regarded, unless the contrary appear in evidence, as the *bona fide* holder and proprietor of such bill or note, and shall be entitled to recover, notwithstanding there may be on it one or more indorsements in full subsequent to the one to him, without producing any receipt or indorsement back from either of such indorsees, whose names he may strike from the instrument, or not, as he may think proper. [See, also, Sec. 10018, R. S. 1909.]

5. ————: ————: ————: ————: Payees the Holders: Instructions. Where the payees of a note indorsed it to a bank for collection, and that bank indorsed it to another, and after the latter failed to collect it at maturity the payees appointed the plaintiff trustee to make collection and apply the proceeds, it is immaterial, in the plaintiff's suit on the note, how the question of his right to sue was submitted to the jury, there being nothing in the case to rebut the presumption, arising from their possession, that the payees are the holders. [Sec. 10160, R. S. 1909.]

6. ACTION ON PROMISSORY NOTE: Given for Mining Claims: Failure of Consideration: Appeal. Where the defendants to a suit on a note proceeded in the trial court upon the theory that failure of title to a part of the mining claims for which the note was given was a complete defense, and no evidence was given as to the value or relative value of the land to which the defective titles applied, they cannot upon appeal obtain a retrial on the theory that there was a partial failure of consideration. [See Sec. 9999, R. S. 1909.]

7. ———: ———: ———: Retaining Possession of the Land. Purchasers of mining claims, the title to a part of which proved defective, cannot, while holding possession of the land, defend against the payment of their note for the purchase price as for failure of consideration.

8. ———: ———: ———: Burden of Proof. Since a promissory note imports a consideration, the burden of proving lack or failure thereof rests upon those resisting its payment, and where the answer to an action on a note admitted that its consideration was the transfer to the defendants of mining property with a warranty of title, the burden was upon the defendants to show that the property had not been delivered to them or that they had been deprived of some of it on account of failure of title, the word "transfer" implying delivery of possession.

9. ———: ———: ———: ———: Evidence. Even assuming, although the contrary is true, that the burden of proving a consideration for a promissory note rested with the one suing on it, the testimony of one of the defendants to an action on a note given for mining property, who replied to a question whether they had held the property ever since they received it, that he supposed that would be it, was sufficient evidence that possession had been delivered and that the defendants had not been deprived of any part of the property through failure or defect of title.

Appeal from St. Louis City Circuit Court.—*Hon. W. B. Homer,* Judge.

AFFIRMED.

*Thomas K. Skinker* and *Barclay, Orthwein & Wallace* for appellants.

(1) The petition does not state a cause of action in omitting to state facts to show that plaintiff is the holder of the note. The petition avers the title to the note to be in the Bank of Commerce by regular indorsement. Spears v. Bond, 79 Mo. 467; R. S. 1909, sec. 10004. This point is never waived. Lilly v. Menke, 126 Mo. 190. (2) The evidence of plaintiff shows that the title to the note is in the National Bank of Commerce by regular indorsement, which, under the Negotiable Instruments Law, makes this plaintiff an im-

proper party to maintain this action. R. S. 1909, sec. 10004. (3) Suit on such a note must be brought by the real party in interest, otherwise the defendants would not be protected by payment to another. Wells v. Moore, 68 Mo. App. 501; Spears v. Bond, 79 Mo. 467. (4) Where an answer sets up plea of failure of consideration in a note (because given for a defective title) and there is a general denial thereof by the reply, the ''issue made by the replication to the defendant's answer was the only issue to be tried.'' The issues of the pleadings are those on which alone the cause should be tried and determined. Stewart v. Hadley, 55 Mo. 245; Northrup v. Ins. Co., 47 Mo. 435; Musser v. Adler, 86 Mo. 449. (5) It was error by the learned trial Judge, by the instruction given of his own motion, to spring a new theory of the case, outside the issues of the pleadings, and outside the evidence, action and theory of both parties at the trial, because both parties are bound and limited by the theory on which the cause was actually shaped in the pleadings and tried under them. The rule that a party is limited on appeal to the theory on which he tried the case in the lower court is established by many decisions, of which only a few are cited, as it is familiar law here. Whetstone v. Shaw, 70 Mo. 575; Walker v. Owen, 79 Mo. 568; Minton v. Steele, 125 Mo. 181. That decisive instruction was further erroneous because there is no proof that defendants ''were put in possession of said mining claims.'' On the contrary one of the payees was shown to be in possession; and if not personally, then as representative of another company (the National Copper Mining Co.) in which he and Dr. Westlake and others were all interested. It is error to give an instruction not supported by the testimony. (6) Under the Missouri statute (changing the older English rule) a plea of failure of consideration (in whole or in part) is permissible in an action on a note, without returning the property for which the note represents the purchase

price. Our law on this subject is and was intended
to change the prior rule of the British law on that sub-
ject. R. S. 1909, sec. 1974; Danforth v. Crookshanks,
68 Mo. App. 315; Brown v. Weldon, 99 Mo. 564. The
purpose of that Missouri rule is to avoid circuity of ac-
tion and multiplicity of suits. That purpose as well
as the statute itself has been inadvertently overlooked
in one or two exceptional cases which are out of line
with the statute and with many analogous decisions in-
volving the law of sales, where the property has been
delivered to the vendee. R. S. 1909, sec. 1974; Brown
v. Welden, 99 Mo. 564; Danforth v. Crookshanks, 68
Mo. App. 317; Werner v. O'Brien, 40 Mo. App. 483.
(7) A rule which has been stated in some early cases
in Missouri to the effect that in a suit for the pur-
chase money of land the defendant (while retaining
possession) cannot defend on the ground of defective
title, is unsound in principle as it ignores our statute.
R. S. 1909, sec. 1974. It has been denied in many
cases as applied to personal property, although there
is no difference in principle as we can discern between
the two subjects. Hannah Co. v. Holley Co., 140 S.
W. 923; 30 Am. & Eng. Ency. Law (2 Ed.), 209; Brown
v. Weldon, 29 Mo. 564; Smith v. Means, 155 S. W.
454; Crenshaw v. Looker, 185 Mo. 388; Sinnamon v.
Moore, 161 Mo. App. 168; Sanders v. Mosbarger, 141
S. W. 720; Stark Co. v. Mayhew, 141 S. W. 433; Shep-
hard v. Padgitt, 91 Mo. App. 473; Ferguson Co. v.
Farmer, 128 Mo. App. 300; Broderick v. Andrews, 135
Mo. App. 57; Mobile v. Nelson, 154 Mo. App. 616;
Branson v. Turner, 77 Mo. 489; Miles v. Withers, 76
Mo. App. 87; Jones v. Shaver, 6 Mo. 642; Benton v.
Klein, 42 Mo. 97; Keith v. Hobbs, 69 Mo. 84; Wade v.
Scott, 7 Mo. 509; Jolliffe v. Collins, 21 Mo. 338. (8)
The nature of mining lodes is so close akin to that of
the ore which forms the chief value thereof, that the
rule of law as to such property is thus stated: "The
purchaser of a mine, who buys under a contract for a

future title, even though he takes possession of the mine and manages the property, if it was the intention of the parties that he should immediately take possession, this will not constitute a waiver of objections to a defect in the title by the purchaser." White, Mines (1903), sec. 95, p. 126; Stephens v. Guppy, 3 Russ. 171; Babcock v. Case, 61 Pa. St. 427; Tuck v. Downing, 76 Ill. 71. In cost book companies: Curling v. Flight, 2 Phil. 614.

*Bishop & Cobbs* for respondent.

(1) Defendants' objection to the petition cannot be sustained. (a) Because an objection to the introduction of testimony on account of alleged insufficiency of petition comes "too late to deserve favorable consideration." Storage Co. v. Kuhlmann, 238 Mo. 703; Goldsmith v. Candy Co., 85 Mo. App. 600. (b) Because the petition is sufficient. It is based on a promissory note and alleges possession under written assignment. It is not necessary to use the term, "holder." Possession alone is prima-facie evidence of right to sue, but plaintiff alleged and proved not only possession but also authority from owners to collect. Sec. 10021, R. S. 1909; Boeka v. Nella, 28 Mo. 180; Morris v. Morris, 28 Mo. 114; Lewis v. Bowen's Admr., 29 Mo. 202; Davis v. Carson, 69 Mo. 609, l. c. 610; Dawson v. Wombles, 123 Mo. App. 345. (2) The bank has no title to or interest in the note. Plaintiff alleged and proved that the note was indorsed and delivered to bank for collection only. After protest, the bank returned the note to payees, who were liable to bank as indorsers, and who, after taking the note back, delivered it to plaintiff under written assignment. (a) Indorsement to bank could have been stricken out. Sec. 10018, R. S. 1909. Section 10004 is not in conflict with section 10018. (b) Indorsement to bank was properly disregarded. Beattie v. Lett, 28 Mo. 597; Bank v. Fes-

ler, 89 Mo. App. 224. (3) This suit was brought by the "real party in interest." Plaintiff was trustee of an express trust under the assignment in evidence, and was the only proper or necessary party. Sec. 1730, R. S. 1909; Snider v. Express Co., 77 Mo. 527; Springfield for use v. Weaver, 137 Mo. 670; Bank v. Edwards, 84 Mo. App. 469; Gerney v. Moore, 131 Mo. 668; Barnes v. McMullins, 78 Mo. 277; Barber v. Stroub, 111 Mo. App. 60; Greer v. Zinc Co., 126 Mo. App. 173; Johnston v. O'Shee, 118 Mo. App. 293; Simmons v. Wittmann, 113 Mo. App. 374; Jones v. Railroad, 178 Mo. 542; Lee v. Railroad, 195 Mo. 519; Sawyer v. Railroad, 156 Mo. 475. (4) The case was tried and decided on the only real issues involved. The allegation in answer that title "was not sound and good" is not sufficient as a plea of total failure of consideration. Failure of consideration must be properly pleaded to be considered. Here it was neither properly pleaded nor proved. (a) The note was prima-facie evidence of consideration. Sec. 9995, R. S. 1909. (b) Failure of consideration is a matter of defense to be properly pleaded and proved by defendants. Sec. 9999, R. S. 1909; Holmes v. Farris, 97 Mo. App. 311. (c) The burden of proving total failure was on defendants. Thompson v. Crutcher, 26 Mo. 321; Kent v. Miltenberger, 13 Mo. App. 513. (d) Plea of defect in title only, without alleging and proving dispossession, is not sufficient as a total failure of consideration. Pershing v. Canfield, 70 Mo. 143; Cartwright v. Culver, 74 Mo. 182; Davis v. Watson, 89 Mo. App. 26; Hunt v. Marsh, 80 Mo. 398. (5) No new theory was sprung by trial court. Changes in theory apply only on appeal, not to trial courts. The question of possession of the mining claims was in the case from the beginning and was properly submitted to the jury. The instructions given were in exact accordance with the law and the evidence. (a) Mining claims are real estate. Mining & Smelting Co. v. Rucker, 28 Fed. 221; McFeters v. Pier-

son, 15 Colo. 203; Manuel v. Wulff, 152 U. S. 510;
Hardware Co. v. Frank, 25 Mont. 348; State v. District
Court, 24 Mont. 332; Harris v. Equator M. & S. Co., 8
Fed. 866; Melton & Fisher v. Lambard, 51 Cal. 259.
(b) The receipt of title imports receipt of possession.
Clark v. Ins. Co., 52 Mo. 276; 13 Cyc. 572, 6, d. (c)
The burden was on defendants to prove that they had
not received possession, or that they had been dispos-
sessed. Thompson v. Crutcher, 26 Mo. 321; Holmes
v. Farris, 97 Mo. App. 311; Tow Co. v. Orphius B. I.
Co., 52 Mo. App. 529; Knoche v. Whittman, 86 Mo.
App. 568. (d) Defendants received and held posses-
sion of mining claims. They did not deny possession,
and their possession was taken for granted throughout
trial. They admit in their answers that the mining
claims were transferred to them. Change of posses-
sion is implied, especially in mining claims. The con-
tention that Laughlin (one of the payees) was in pos-
session falls, because he was shown to be employed by
defendants. McManus expressly admitted possession.
If defendants had not been in the possession and en-
joyment of these claims, they would have pleaded want
of possession and asked a return of the cash payment
made on account of same. Defendants admitted pos-
session and also liability by paying $1500, three months
after note was given. (e) The court submitted the
question of possession to the jury by proper instruc-
tion. It was the only defense on the merits open to de-
fendants in this case. Cartwright v. Culver, 74 Mo.
182; Pershing v. Canfield, 70 Mo. 143; Davis v. Wat-
son, 89 Mo. App. 26; Hunt v. Marsh, 80 Mo. 398. (6)
The Missouri statute permitting a plea of failure of
consideration in a suit on a note (Section 1974) cannot
avail defendants in this case. (a) "Notwithstanding
this provision, we are still left to general principles to
ascertain what is a failure of consideration." Smith
v. Buzbee, 15 Mo. 247. (b) It does not relieve defend-
ants of necessity of returning the consideration or

proving it to be worthless. Brown v. Weldon, 99 Mo. 568; Rogers v. Publishing Co., 118 Mo. App. 12. (c) Defendants did not and could not prove that the consideration was worthless, and they made no offer to return it. The evidence showed no failure of consideration, but only that, at the time of giving the deed, the title to 33 out of 160 acres was in controversy. That controversy was removed. Defendants suffered no damage and have shown none. (7) Defective title to real estate purchased does not constitute failure of consideration. (a) Rule as to real estate is different from personal property. After acquiring an unquestionable title to about 130 acres and after holding and enjoying the whole 160 acres, defendants cannot defeat a suit for the purchase money by showing that, at time of receiving deed, title was defective as to 33 acres. Davis v. Watson, 89 Mo. App. 26; Cartwright v. Culver, 74 Mo. 182; Hunt v. Marsh, 80 Mo. 398; Pershing v. Canfield, 70 Mo. 143. (b) Rule, even as to personal property, requires defendant to either return the property, or prove it worthless, or prove loss or damage. Numerous cases cited by counsel are all personal property cases and taken together establish the rule that, even in suits for the purchase money of personal property, the defendant cannot establish total failure of consideration without either returning the property or proving it worthless.

BROWN, C.—Petition filed November 9, 1909, in the circuit court for the city of St. Louis. The plaintiff sues as trustee of The Gila Farm Company, Oliver J. Westlake and Charles J. Laughlin, upon a promissory note signed by Edward Butler and Thomas Ward McManus, dated May 1, 1907, payable to said Westlake and Laughlin or order on or before May 1, 1908, for $25,000, with interest from date at the rate of five per cent per annum, on which $1500 had been paid and indorsed July 31, 1907. The petition states that "on the

15th day of June, 1908, the said Oliver J. Westlake and Chas. P. Laughlin entered into an agreement in writing, whereby they transferred and assigned, for a valuable consideration, to the The Gila Farm Company, a certain defined interest in said note, to-wit: an interest of $18,000, together with interest thereon at the rate of five per cent per annum from the first day of May, 1908, which said agreement is filed herewith, and marked exhibit B; that said note was placed in plaintiff's hands, and by said agreement plaintiff was authorized and directed to make collection of said note, and out of the proceeds thereof to pay to said The Gila Farm Company, the said sum of $18,000, together with interest thereon, as hereinbefore set out.''

The defendants each filed a separate answer, which, with a general denial, pleads as follows:

"1.  Avers that plaintiff has not legal capacity to maintain this suit, in manner and form as the same is brought.  Wherefore this defendant prays to be hence discharged with his costs.

"2.  For further defense this defendant avers that there is a defect of parties plaintiff, in that said plaintiff, trustee, cannot lawfully maintain this action, in manner and form as the same is brought.  Wherefore this defendant prays to be hence discharged with his costs.

"3.  This defendant for further defense avers that some of those named as beneficial plaintiffs herein are not necessary parties to a complete determination of the action, and therefore should not have been joined therein.  Wherefore because of said redundancy of parties this defendant prays to be hence discharged with his costs.

"4.  This defendant for further defense avers that plaintiff, as alleged trustee, is not the real party in interest to prosecute or maintain this action, in manner and form as the same is brought.  Wherefore this defendant prays to be hence discharged with his costs.

"5. This defendant for further defense admits execution of said note, and admits that defendants paid thereon, heretofore, the sum of $1500; and for further defense he avers that the consideration for said note was a transfer of certain mining property in New Mexico by the payees therein to the makers of said note, the title to which property was then and there warranted and agreed by the payees in said note to be sound and good, but said consideration for said note has failed, in· that the title to said mining property for which said note was executed and delivered was not sound and good but was defective, wherefore because said consideration failed, no one claiming through the payees of said note can lawfully maintain an action thereon."·

Plaintiff replied by general denial.

The note was duly protested for nonpayment at St. Louis at the instance of the National Bank of Commerce May 1, 1908, and written on its back were the following indorsements without date: "Pay to the order of Silver City National Bank, Silver City, N. M. Charles P. Laughlin.    Oliver J. Westlake."    "Pay Nat'l Bank of Commerce in St. Louis, or order, Silver City Nat'l Bank, Silver City, N. M.    J. W. Carter, Cashier."

The evidence tended to prove, and was undisputed, that the payees indorsed the note to the Silver City National Bank, of which the plaintiff was cashier, for collection, with direction to forward it to St. Louis for collection, and to get collection on it, without designating to whom it should be sent in St. Louis.    Colonel Carter stamped on it the indorsement to the National Bank of Commerce in St. Louis and mailed it.    After it was protested it was returned to the Silver City National Bank, where it remained until the institution of this suit.

Plaintiff introduced the following instrument:

"Know all men by these presents, That we, Oliver J. Westlake and Charles P. Laughlin, in consideration of the sum of one dollar to us in hand paid by the Gila Farm Company, the receipt whereof is hereby acknowledged, do hereby sell, assign, transfer, and set over unto the said the Gila Farm Company, the certain hereinafter defined interest in that certain promissory note dated May 1, 1907, made by Edward Butler and Thomas Ward McManus, payable to the order of us, the said Oliver J. Westlake and Charles P. Laughlin, on or before one year from its date for the sum of $25,000, with interest thereon from date until paid at the rate of five per cent per annum, the said interest therein so transferred and assigned as aforesaid being the sum of $18,000 together with interest thereon at the rate of five per cent per annum from the 1st day of May, 1908. The said promissory note is now in the hands of J. W. Carter for collection and he is hereby authorized and directed to make collection of the same and to pay to said The Gila Farm Company the said sum of $18,000 together with said interest as aforesaid, out of the proceeds of the same. We do further covenant and agree that if the said note be collected by us or in any other manner than through the said J. W. Carter, we will at once turn over and pay to said the Gila Farm Company, the said sum of $18,000, together with said interest as aforesaid, out of the proceeds thereof. We do further covenant, warrant and agree to and with said the Gila Farm Company the said promissory note constitutes a valid and binding indebtedness of the said Edward Butler and Thomas Ward McManus to us, and that the same is now due and payable. In witness whereof, we have hereunto set our hands and seals this 15th day of June, A. D. 1908.

"OLIVER J. WESTLAKE, (seal).
"CHARLES P. LAUGHLIN, (seal)."

The note was given as part of the consideration for the purchase by Butler and McManus of eight mining claims or lode locations in Grant county, New Mexico, covering an area of slightly more than 160 acres. The sale was made in the latter part of April, 1907, while Butler and McManus were in Silver City, for $40,000. One thousand dollars was paid down in cash. On May 18, 1907, $14,000 was paid, and the note and deed, both of which were then in the Silver City National Bank for that purpose, were delivered, the note remaining in the bank for safe-keeping. The granting clause of the deed is as follows:

"That the said parties of the first part, for and in consideration of the sum of one thousand dollars, to them in hand paid by the said parties of the second part, the receipt whereof is hereby acknowledged, have remised, released and quitclaimed, and by these presents do remise, release and quitclaim unto the said parties of the second part, their heirs and assigns:

"All the following described real estate and mining property, situate in the Burro Mountain Mining District, county of Grant and Territory of New Mexico, to-wit:

"The Ajax Lode mine and mining claim, the location notice whereof is duly recorded in the office of the probate clerk and ex-officio recorder for Grant county, New Mexico, in book 19 of Mining Locations, at page 427."

Then follows, in the same form, the description of the Ajax No. 2, the Ajax No. 3, the Ajax No. 4, the Princeton, the Hazleton, the Black Oak and the Big Horn Lode mines and mining claims.

The habendum and covenants are as follows:

"To have and to hold the lands, tenements hereby conveyed unto the said parties of the second part, their heirs and assigns forever, and the said parties of the first part do covenant and agree with the said parties of the second part that said mines and mining claims

are free from all taxes and liens of whatever nature or kind, and that they have good right and lawful authority to sell and convey the same.''

The defendants took possession of the land described in the deed. The defendant Laughlin was their superintendent and manager, working an adjoining mine called ''The National,'' and supposed to be their superintendent or general manager. The defendant McManus testified about the possession as follows: ''Q. You have held it ever since you received it from them? A. I suppose that would be it.''

Sometime after the conveyance to defendants it was discovered that the whole of the Black Oak claim, containing 21.741 acres, upon which there were several buildings, as well as small fractions of the Hazelton claim (6.050 acres) and the Ajax claim (5.394 acres), in all 33.185 acres, conflicted with surveyed land theretofore patented to one Simmons. The plaintiff proved title to the land conflicting with this patent in the Lyons and Campbell Ranch and Cattle Company and offered a copy of the record of a master's deed in Grant county, New Mexico, certified by the probate judge and ex-officio recorder of deeds of said county, purporting to convey the same land to the Gila Farm Company, New Mexico, a corporation. This deed recited that the grantor was appointed special master or referee by the district court of the third judicial district of the Territory of New Mexico for the county of Grant in a cause pending in said court entitled ''The Farmers' Loan and Trust Company, a corporation, Trustee, plaintiff, v. Lyons & Campbell Ranch & Cattle Company et al., defendants.'' That they advertised the property for sale in a newspaper published in said county on Tuesday of each week, beginning August 20, 1907, and ending September 17, 1907; that the Gila Farm Company was the highest bidder for it and other property both real and personal at the price of $100,000, for which it was struck off and sold to that company.

This deed purported to have been acknowledged before a notary public of Grant county, and there was written on it the following: "This deed, together with the sale represented thereby, is approved this 19th day of September, 1907, at Silver City, New Mexico. Frank W. Parker, Judge, Etc."

The defendants objected to its introduction as follows: "It does not appear by what authority this deed is made, whether it was authorized by the order of court, or what were the circumstances upon which it is based. Nor does it appear that the formal steps of the order under which it purports to have been made were observed. The order itself does not appear. Also this deed is irrelevant to the present inquiry because made on the 19th of September, 1907. On the 14th of May, 1907, there was no sufficient title in these parties to support the deed, which they then made to defendants. I imagine it is intended to be at least a chain of title through subsequent events; all of which is irrelevant because there being nothing but a general denial here by way of reply, the only issue is whether they had the title at the time that this deed of May 14, 1907, was executed and delivered." No objection was made on the ground that it was a copy or that it was not properly authenticated. The objection was overruled and the deed admitted, to which the defendants duly excepted. The plaintiffs then introduced a general warranty deed in the usual form, conveying all that part of the claims conflicting with the Simmons patent, by the words grant, bargain, sell and convey, from Westlake and Laughlin and their wives to the defendants. This deed was dated May 1, 1908. It contained all the usual covenants of seizin, right to convey, against incumbrances and for quiet enjoyment. The evidence tends to show that a general warranty deed dated April 30, 1908, from the Gila Farm Company to Westlake and Laughlin, for an expressed consideration of $18,000, was tendered by plaintiffs to Mc-

Manus August 21, 1908. At the close of the trial the court of its own motion gave the jury the following instruction:

"1. The court instructs the jury that if you find from the evidence that the plaintiff, J. W. Carter, is the holder of the note introduced in evidence, and that the consideration of said note was the transfer of certain mining claims referred to in the evidence from the payees in said note, Westlake & Laughlin, to the makers of said note, Edward Butler and Thomas Ward McManus, defendants in this case, and that said Butler and McManus were put in possession of said mining claims by said Westlake & Laughlin under their deed of date May 14, 1907, which is in evidence, and that said Butler and McManus have since that time had peaceable possession of said mining claims, then your verdict should be for the plaintiff for the amount of said note with interest, after deducting all payments made thereon."

The defendants asked the court to instruct peremptorily for each defendant, which it refused to do, to which defendants excepted at the time.

The defendants asked for seventeen other instructions which were refused by the court and exceptions saved to each. These will be noticed in this opinion as necessary.

I. The appellant, at the very outset, comes to the vitals of his case with the complaint that the petition does not state a cause of action because it omits to state facts to show that the plaintiff is the holder of the note sued on, but, on the contrary, avers the title to be in the Bank of Commerce by regular indorsement. While that objection must be considered at any stage of the case, and sustained if well taken under the circumstances, we have said frequently

*Failure to State Cause of Action: Raised on Appeal.*

264Mo21

and in many forms that when the question is raised in due time by motion or answer, so as to facilitate and simplify the trial of the real issues, it will be received with greater favor, and permitted a wider field of operation, then when interposed after the labor, expense and delay of a trial. [Ice, etc., Co. v. Kuhlmann, 238 Mo. 685, 703.] As said by Judge VALLIANT in Haseltine v. Smith, 154 Mo. l. c. 413, "if a party lies in wait for his adversary the court should not allow him an advantage that he could not have attained in the open field." Our rules of procedure should admit of greater flexibility in attaining right and justice promptly and cheaply than in avoiding it. Judged by this standard we think the petition fairly presents the facts upon which the plaintiff claims such a title to the note sued on as enables him to maintain this action, and we will therefore consider that question upon its merits, in the light of the whole record.

Action on Note: Plaintiff's Right to Sue.

II. The note sued on is payable to order, and appellants call attention to the fact that it shows, on its back, a perfect title by indorsement in the National Bank of Commerce, "which," they say, "under the Negotiable Instruments Law makes this plaintiff an improper party to maintain this action;" and they cite sections 10001 and 10004, Revised Statutes 1909, in support of this conclusion. The first of these sections is as follows: "An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder, completed by delivery." The other section cited (10004) provides, among other things, that "a special indorsement specifies the person to whom or to

Negotiable Instruments: Transfer: Indorsement for Collection: Suit by Trustee for Payees.

whose order the instrument is to be payable; and the indorsement of such indorsee is necessary to the further negotiation of the instrument.'' The appellants infer from this that the law relating to negotiable instruments has been so changed that no interest in the contract expressed by such paper can be transferred or acquired in any other way than that provided in these two sections, and that the word ''negotiated'' as used in them is equivalent to the words ''assigned'' or ''transferred'' in their broadest sense, and that the word ''holder'' covers all the ground included in the words ''owner'' and ''party in interest.'' A glance at the law itself quickly dispels that illusion. These words are highly technical when used in connection with this class of instrument and its peculiar properties. The word ''negotiate'' is derived from the word ''negotiable,'' and when both words are used in connection with the same subject they partake of the same meaning. Abbott, in his Law Dictionary, under the title ''negotiate,'' defines it as follows: ''To transfer, under rules of the commercial law, an evidence of debt or instrument for payment of money, so that the holder's title is independent of any equities existing against the transferor; to transfer by indorsement.'' The learned author adds that ''negotiable'' and ''negotiability'' include this meaning only. Mr. Bouvier, in his dictionary, says that ''negotiation as used by writers on mercantile law means the act by which a bill of exchange or promissory note is put in circulation, by being passed by one of the original parties to another person. [Walker v. Ocean Bank, 19 Ind. 247.]''

Section 10001 expressly recognizes that a transferee is not always the holder in the sense implied by the act, and this is fully explained by section 10019, which is as follows:

''Where the holder of an instrument payable to his order transfers it for value without indorsing it,

the transfer vests in the transferee such title as the transferrer had therein, and the transferee acquires, in addition, the right to enforce the instrument against one who signed for the accommodation of his transferrer, and the right to have the indorsement of the transferrer if omitted by accident or mistake. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made.''

This section conclusively shows that it was not intended by section 10004, or by any other provision of the act, to prescribe any exclusive method by which contracts of this character might be transferred. It only prescribes the manner in which their negotiability, that is to say, their independence of equities existing against the transferor, may be preserved. In other respects it leaves the laws in force at the time of its passage untouched except in so far as the rights of the transferee are *enlarged* by the terms of the section. One of these enlargements is the right to still have the indorsement of the transferor if it has been omitted by accident or mistake, and to thus become a holder *in due course.* We thus see that the word *holder,* as used in section 10001 to represent the position of the indorsee, has reference to such a title as may constitute him a ''holder in due course'' as those words are used in the act. For all other purposes than to preserve its negotiability in the sense we have mentioned, and its negotiability is not involved in this case, the Negotiable Instruments Law of 1905 left this instrument transferable in the same manner and as freely as if it had not been enacted. So far as the right of plaintiff to maintain the action is concerned, it depends upon the right of the payees at the time of the execution of the contract of June 15, 1908, pleaded and shown by plaintiff as the foundation of his title. It is sufficient in form to constitute him the trustee of the parties to it for that purpose.

III.  Before the note became due the payees took
the usual steps for the collection of such paper by in-
dorsing it to their local bank, The Silver
City National Bank, for that purpose; and
that bank in turn, as the custom is in such
cases, indorsed and transmitted it to the National Bank
of Commerce in St. Louis, the home of the makers,
where it must be presented for payment, for the like
purpose.  Neither of these indorsements gave the in-
dorsee any interest whatever in the note.  It simply
constituted him a naked trustee of an express trust to
collect it and account, like all trustees, for the fund, to·
whom it might concern.  The prevalence of and neces-
sity for such indorsements to meet the demands of
commercial transactions which include the world in
their field, in which paper drawn in our homes is fre-
quently collected in the antipodes, is no doubt one of
the reasons for the growth and firm establishment of
the. rule which in its effect transforms commercial pa-·
per payable on its face and by indorsement "to order,"
into paper payable "to bearer" in the possession of
any of its payees and indorsees.  In *Dugan* v. *United
States*, 3 Wheat. 172, perhaps the leading modern case
upon the subject, the Supreme Court of the United
States formulated the rule as follows:  "After an ex-
amination of the cases on this subject (which . cannot
all of them be reconciled), the court is of opinion that
if any person who indorses a bill of exchange to an-
other, whether for value or for the purpose of collec-
tion, shall come to the possession thereof again, he
shall be regarded, unless the contrary appear in evi-
dence, as the bona-fide holder and proprietor of such
bill, and shall be entitled to recover, notwithstanding
there may be on it one or more indorsements in full
subsequent to the one to him, without producing any
receipt or indorsement back from either of such in-
dorsees, whose names he may strike from the bill, or
not, as he may think proper."  This case was decided

*Subsequent
Indorsees.*

in 1818. In 1859 Mr. Story, in his excellent work on Promissory Notes, sec. 452, said of it that it seemed to be the better opinion maintained in America, notwithstanding some early doctrine the other way. In the same year the doctrine to its fullest extent was unqualifiedly indorsed by this court in Beattie v. Lett, 28 Mo. 596, and it has now been placed entirely beyond our control by the Legislature, in section 10018, Revised Statutes 1909, which is as follows: "The holder may at any time strike out any indorsement which is not necessary to his title. The indorser whose indorsement is struck out, and all indorsers subsequent to him, are thereby relieved from liability on the instrument." Section 10160 defines "holder" to be "the payee or indorsee of a bill . . . *who is in possession of it.*" This definition was evidently intended to meet the legal situation we have just been considering by *excluding* from its terms all payees and indorsees not in possession, as well as by *including* the payee or indorsee in possession for the time being.

Applying these principles: The plaintiff brings this note into court with a written contract by which the payees appoint him trustee for its collection and

**Payees the Holders: Instructions.** application to the purposes stated. He does not claim to hold it for himself, but for the payees. The instrument of appointment expressly negatives any interest in the plaintiff by reserving to the payees the right to collect it themselves. The payees having, through their agent, the possession of the note, are, under the statute, the holders of it, having the right to sue for its collection, and having that right they have the right under section 1730, Revised Statutes 1909, to contract, either orally or in writing, with the plaintiff to sue for their benefit and the benefit of others to whom they desire to appoint the proceeds. It is not necessary that they should prove, or that the plaintiff should prove for them, that they are the holders. The law

raises a prima-facie presumption to that effect from the fact that they are the payees in possession, and there being nothing in this case to rebut that presumption, it is immaterial in what form the question of the right of their trustee to maintain the suit was submitted to the jury.

IV.  The question of failure of consideration is next interposed as a defense.  In approaching this it is well to say that there is nothing in either the pleadings, proof or position of the parties to the transaction that carries a hint of unfairness or undue advantage.  Each of the parties had active interests in the particular locality where the mining property which was the subject of the transaction is situated, and, so far as appears in the evidence, they had equal opportunities to judge of its value.  It is conceded by the plaintiff that, at the date of the deed, the title of the grantors to one of the eight claims that constituted the consideration of the note sued on, and also to a small portion of each of two others, was defective.  Whether this, under the pleadings and evidence, constitutes a defense to this suit on the notes is the question.

*Failure of Consideration: Appeal.*

In this inquiry we are still aided by the Negotiable Instruments Law.  It provides (sec. 9999): "Absence or failure of consideration is a matter of defense as against any person not a holder in due course; and partial failure of consideration is a defense *pro tanto,* whether the failure is an ascertained and liquidated amount or otherwise."

The answers stated that the sellers and payees in the notes given for the mining property warranted the title to be sound and good, that it was not sound and good, wherefore the consideration of the notes had failed.  The case was tried by defendant upon that theory alone.  No evidence was given as to the value or relative value of the land to which the defective

titles applied, nor was there any data to guide the jury in an attempt to find such values, and the defendants made no attempt by their instructions to have the question of partial failure of consideration submitted to them, but asked that they be instructed as follows:

"If you believe from the evidence that the note sued on in this action was executed and delivered by defendants to Oliver J. Westlake and Charles P. Laughlin, as part consideration for the purchase by defendants from said Westlake and Laughlin of certain interests in real estate, to-wit, mining claims, in the county of Grant, Territory of New Mexico, and that a conveyance thereof was made, as shown by the deed offered in evidence herein, dated May 14, 1907; and if you further find that, at the time of said conveyance to defendants, said Westlake and Laughlin did not have title to a portion of said property so conveyed, and did not then have good right to sell and convey the said interests (described in said deed), but that the title thereto was (at the time said note was executed and delivered) in a person or persons or corporation other than said Westlake and Laughlin, and if you further find from the evidence that said property named in said conveyance consisted of contiguous mining claims, and purchased by defendants for mining purposes, then your verdict should be for defendants."

Having tried the case upon the theory that the failure of the title to any part of the mining claims which constituted the consideration of the note was a complete defense to this action, and having asked the court to so instruct, it is now too late to ask a retrial upon a theory, and calling for a line of evidence, not suggested in the case we now have before us. [Tube Works Co. v. Ice Machine Co., 201 Mo. 30, 59.]

V. We now come to the real question submitted by the court to the jury as follows: "If you find from

**Retaining Possession of Land.** the evidence . . . that said Butler and McManus were put in possession of said mining claims by said Westlake and Laughlin under their deed of date May 14, 1907, which is in evidence, and that said Butler and McManus have since that time had peaceable possession of said mining claims, then your verdict should be for the plaintiff for the amount of said note and interest after deducting all payments made thereon." The effect of this instruction, under the pleadings and evidence, was to tell the jury that if the defendants had taken possession of the land under the deed, and the title to some part of it had proven defective or failed, they could not retain the whole and resist the payment of the purchase price. No principle of law can be more firmly established in this State than the above, and there is no principle of right or justice that calls for a reexamination of the numerous cases in which it has been asserted. [Mitchell v. McMullen, 59 Mo. 252; Connor v. Eddy, 25 Mo. 72, 75; Wheeler v. Standley, 50 Mo. 509, 511; Cartwright v. Culver, 74 Mo. 179; Hunt v. Marsh, 80 Mo. 396, 398; Davis v. Watson, 89 Mo. App. 15, 26.] These cases all unite in affirming the doctrine that where one purchases land, taking a deed therefor with covenants of warranty, and goes into possession, he cannot, while holding possession of the land, defend against the payment of his note for the purchase price as for a total failure of consideration. He is limited in his defense to the damages he has suffered by the breach of the warranty of title. This case affords an excellent illustration of the principle. The deed, so far as its granting words go, is a simple quitclaim. When the grantees succeeded to their grantors' possession, they had everything that the deed for which the note was given purports to give them; the possession of the land and such title as the grantors had to sustain it. There was nothing else connected with the consideration of the note but the covenant that the claims were

Carter v. Butler.

free from taxes and other liens, and that the grantors had good right to convey them. The only "failure of consideration" in the transaction was the breach of this covenant. The extent of the grantors' liability was such damage, if any, as the defendants suffered from it. This defense, however, seeks to turn it into an instrument by which they can keep the entire property without paying for it. The trial court committed no error in refusing to submit the case on that theory.

VI. The note in suit imported a consideration, and the burden rested upon the defendants to prove affirmatively that it was lacking or had failed. The answer admitted that the consideration was the transfer to defendants of certain mining property with a warranty of title, and that the title was defective. The word transfer implies delivery of possession. They could not have chosen a broader word to express it. Bouvier defines it as "the act by which the owner of a thing delivers it to another with the intent of passing the right he has in it to the latter." To the same effect are Ex parte Thomason, 16 Neb. 238, and Robertson v. Wilcox, 36 Conn. 426. If the possession of the property had not been delivered to defendants, or if they had been deprived of any part of it on account of failure or defect of title, the burden was on them to show it. But even were this burden upon the plaintiff it was well sustained. The statement of Mr. McManus already quoted amounted to an admission that the possession had been delivered to the defendants and that they had held it up to the time he testified.

Burden of Proof.

We find no error against the appellant, and the judgment of the St. Louis City Circuit Court is affirmed.

PER CURIAM.—This cause having been transferred to Court in Banc from Division One, on the dis-

sent of *Woodson, J.*, and having been reargued and submitted, the foregoing opinion of BROWN, C., is adopted as the opinion of the court. All concur except *Woodson, C. J.*, who dissents.