MARTIN BUMGARNER, BY ETC., RESPONDENT, v. H. G. EKSTRUM, APPELLANT.—67 S. W. (2d) 520.

Kansas City Court of Appeals. January 22, 1934.

O. H. *Swearingen* and *Frank H. Backstrom* for respondent.

*Madden, Freeman & Madden* for appellant.

SHAIN, P. J.—This action wherein Marvin Bumgarner, a minor, by his next friend, plaintiff, and H. G. Ekstrum, defendant, is a suit for damages for personal injuries alleged as resulting from the defendant's automobile, while being negligently operated by him, running into and striking the plaintiff while he was riding on his bicycle.

A jury was duly impaneled to try the case, the case was duly taken up, evidence heard on behalf of plaintiff and at the close of plaintiff's evidence the court, over the objection of plaintiff, gave a peremptory instruction directing a verdict for defendant thereupon, the jury returned verdict for defendant and judgment was entered in accordance.

In due time, the plaintiff filed a motion for new trial, the same was taken up by the court and new trial granted from which action defendant duly appealed.

### OPINION.

The appealing defendant in argumentative form makes two assignments of error. When interpreted, the presentation is in effect a claim that there is no evidence shown in the record which presents an issue of fact for the jury.

The trial court assigned as ground for granting a new trial that the court erred in sustaining the demurrer and in directing a verdict

for the defendant. The plaintiff in his motion for new trial specified twenty-three assigned reasons. The reason assigned by the trial court is broad enough to cover and include any one or all of the assigned reasons, if same are sound, or any sound reason, if any, that this court should discover in the record.

The briefs filed in this case include many citations of authority classified under many subheads. All, however, dealing with various phases of the same subject-matter.

- But few cases need be commented upon by us to define this court's limits and duty touching the matters confronting us on this appeal.

In Stewart v. Carrothers, 37 S. W. (2d) 498, it is held that an appellate court may not interfere with an order granting first appeal on weight of evidence.

In Spelky v. Kissel-Skiles Co., 54 S. W. (2d) 761, it is held that appellate courts scrutinize the action of a trial court less. strictly in granting than in refusing a new trial.

In Darnall v. Lyons et al., 51 S. W. 159, this court, in an opinion by TRIMBLE, P. J., held that the action of a trial court in granting a new trial will be sustained, if justified by any ground stated in motion for new trial.

The general rule as to a demurrer to evidence is well stated in Beckermann v. E. H. Kortkamp Jewelry Co., 157 S. W. 855, as follows:

"It is a general rule of law that a demurrer to the evidence should not be sustained where there is evidence tending to establish a right of recovery. And where the evidence viewed most favorably for plaintiff with every reasonable inference in his favor makes out a case, or when reasonable minds may differ as to the effect of the evidence, the case is one for the jury; the credibility of the witnesses and the weight to be given to their testimony being always matters for the consideration of the jury."

In the case at bar the allegations of negligence in plaintiff's petition are as follows:

"Plaintiff states that the defendant at the time and place in question negligently and carelessly failed to keep a proper and sufficient lookout ahead for other automobiles and persons who might be driving on said McGee street trafficway at said time and place, particularly this plaintiff.

"That the defendant negligently and carelessly failed to sound any horn or give any warning of his approach at said time and place.

"That defendant negligently and carelessly failed to exercise the highest degree of care in the operation of said automobile at said time and place.

"That the plaintiff was in or coming into a place of danger of being struck by the said automobile so operated by defendant, and

that the defendant saw or by the exercise of ordinary care and caution could have seen plaintiff in, or coming into a place of danger of being struck by said automobile at the time and place above mentioned, and that plaintiff was oblivious to danger and in a position of imminent peril, in time thereafter for the said H. G. Ekstrum, by the exercise of the highest degree of care and with safety to himself and his said automobile, to have stopped said automobile, or to have turned the same aside, or to have slackened the speed thereof and thereby avoided striking plaintiff's bicycle and injuring plaintiff, but negligently and carelessly failed to do so, and negligently and carelessly ran into, against, over and upon plaintiff and injured plaintiff.''

With the above allegations of negligence in mind, it becomes our duty to scan carefully the whole record and if any fact or circumstance in evidence presents a case for a jury, then the action of the trial court must be upheld.

The evidence discloses that McGee trafficway upon which the accident occurred is a public street of Kansas City running north and south; that the streetway is sixty feet wide and a double trafficway; and the accident occurred about 100 feet south of 25th street.

The plaintiff and one other witness, a Mr. Reubart, are the only ones testifying concerning the accident.

The testimony of the plaintiff was quite extensive by reason of repeated questions and answers concerning the same subject-matter. He testified that he was at the time employed as a delivery boy; that at the time of his injury he was riding on his bicycle south on McGee trafficway to deliver a message; and that after turning south into McGee trafficway and having reached a point about 50 feet south of 25th street a horn attracted his attention and he looked back and saw a bus approaching from behind him. Concerning the approach of the bus, his testimony was as follows:

''Q. When your attention was directed to the bus, what did you do? A. I happened to think it might catch me between the—

''Mr. MADDEN (interrupting): Object to what he happened to think.

''Q. (Mr. SWEARINGEN): Well, what did you do? A. I pulled on an angle to the left.

''Q. You looked before you made any change? A. Yes, sir.

''Q. Was it the bus you heard? A. Yes, sir.

''Q. Now, I will ask you whether or not you saw any other vehicle besides that bus? A. No, sir.

''Q. How far away was the bus from the cars parked along there —now about how far? A. You mean distance from the parked cars over to the bus?

''Q. Yes. A. I should judge about three feet.''

Concerning the progress of himself and the bus, the record shows as follows:

"Q. How fast were you traveling when you were riding along there? A. About eight or ten miles an hour.

"Q. How fast was the bus traveling at that time—when it tooted its horn and you observed it coming? A. I should judge eighteen or twenty.

"Q. You stated the bus was about thirty feet behind you?"

The plaintiff testified that he never saw the car that struck him before he was struck, also, that he heard no horn or warning of any kind outside of the sound of the .bus horn. As to his position and movements, the plaintiff's testimony was, as taken from direct and cross-examination, as follows:

"Q. And this bus was coming up behind you and the side of that bus was about two or three feet from the parked cars or where they would be? A. Yes, sir.

"Q. So, as this bus was coming up, you were riding about in front of the right fender, weren't you? A. Yes, sir.

"Q. And now, how close was this bus to you when you suddenly decided to angle off, as you say? A. Well, when I heard its horn, it is about thirty feet down the street, I angled and I kept going south.

"Q. Just south, Marvin? A. Well, slight southeasterly direction, but kept headed south.

"Q. Now, the only time you looked, I believe you testified, was just before you turned, is that right? A. I looked to see where the bus was.

"Q. Yes. That was the only reason you looked, wasn't it? A. Yes, sir.

"Q. You didn't see any cars down north of the bus on 25th? A. No, sir.

"Q. If there would have been any there, you would have seen them, wouldn't you? A. Probably.

"Q. But, of course, you could not see a car that was up on the other side of the bus, could you? A. No, sir.

"Q. What sort of a bus was this, Marvin? A. Public Service, double-deck bus.

"Q. That is, the largest bus they run on the streets? A. Yes, sir.

"Q. You knew McGee trafficway was a thoroughfare along which a great deal of traffic went? A. Yes, sir.

"Q. And you knew then that is what you might call a double-lane trafficway? You knew it was wide enough for two lanes of traffic coming up each side? A. Yes, sir.

"Q. And this bus, as it came up, was in the west lane on the west side of the street? A. Yes, sir.

"Q. You had ridden around the streets here in Kansas City a good deal? A. Yes, sir.

"Q. Pretty familiar with traffic conditions? A. Yes, sir.

"Q. So that from your position ahead of the right fender of this bus, you turned in a southeasterly direction, is that right? A. Yes, angled off.

"Q. Then you could clear the bus by just what you call an arm's length? A. Yes, sir.

"Q. In other words, as you were riding over here, the bus went up here and you cleared the left front fender by two or three feet? A. No, sir; on my right-hand side the bus cleared the front hind wheels by two or three feet.

"Q. And just as you got out in front of the bus and it cleared you, you were struck, and didn't remember any more? A. No, sir; I remember it half-way well, about to the rear wheels of the bus."

The plaintiff testified that he looked the second time before he was struck. His testimony was as follows:

"Q. Now, you say that when you looked the second time, you have just told me that at the end of that second, how far north did you look? A. As far as I could see down behind the bus.

"Q. You just cleared the bus, you say, at that time? A. I didn't say I looked after I got around the bus; I said as I was going across in front of the bus I looked.

"Q. Oh, it was as you were in front of the bus? A. Yes; as I was going in front of the bus I looked along the side.

"Q. You never looked before you went around the other side of the bus? A. No, sir.

"Q. So you don't know what was on the other side of the bus from you, do you? A. I didn't hear no car there.

"Q. You could hear with a double-deck bus rumbling right behind you? A. Yes; unless he was coasting."

To give to plaintiff's testimony the most favorable interpretation, he had cleared the line of travel of the bus and was about three feet from its east side and the bus had proceeded beside him until he was at about even with front of rear wheels of the bus when he was struck. There is no evidence as to the length of the bus.

Based upon the speed of the bus and bicycle, as testified to by plaintiff, it was less than three seconds from the time he first saw the bus until he was in the position he testified he was in when struck by the car. When plaintiff started to get out of the way of the bus, he looked and from his position saw no car. He further testified that as he was going in front of the bus, he looked along the side of the bus and saw no car. It is apparent from the evidence that the plaintiff never saw the car before it struck him.

The only witness offered by the plaintiff that testified to seeing the car that struck him was Mr. Reubart, who testified that his car was parked on the west side of McGee street about ten feet north of where the accident occurred. He testified that he had crossed McGee traffic-

way preparatory to getting into his car, looking north before entering, and saw down at 25th street a double-decked bus coming south; that he estimated the plaintiff was at that time proceeding on his bicycle some thirty-five to forty feet ahead of the bus; and that he paid no further attention and seated himself in his car. From that point his testimony concerning the collision was as follows:

"Q. What next did you observe? A. The next I observed I heard a crash on my left.

"Q. What did you do? A. I immediately looked toward the east and saw, what I recall, as either a Model A Ford car or Ford roadster, gray color, seemed to me it was and this boy on a bicycle all tangled up.

"Q. You mean the Ford car struck the boy on the bicycle? A. Yes, sir. And at that time they were about ten feet south of me and, if anything, a little to the east of the center line of the street."

There was no witness who testified to the fact that it was defendant's car which struck plaintiff. The plaintiff, however, introduced the defendant's answer in evidence. While the defendant's answer makes no direct admission that defendant's car struck plaintiff, still, when the answer is taken as a whole, the inference is justified that it was defendant's car.

As to the charge of negligence, as to defendant's keeping proper lookout, there is no evidence one way or the other. There is no evidence from which we can conclude the defendant had any better chance to see the plaintiff than the plaintiff had to see him. The plaintiff in his brief indulges in the assumption that defendant came from behind the bus and was attempting to pass the bus. In the absence of any evidence it is as reasonable to assume the defendant was traveling in a parallel line in the double trackway. Liability cannot be predicated on assumption.

As to defendant sounding his horn, the only evidence is that of plaintiff that he did not hear any signal. Further, there is no evidence upon which a trier of the fact can base any conclusion that defendant either saw or ought to have seen plaintiff in time to avoid collision by such warning. There is no evidence from which it can be inferred plaintiff came within the line of vision of defendant at any specific length of time before he was struck; nor is there evidence in the case from which we can infer the defendant was not exercising the highest degree of care. The mere fact that plaintiff in the space of three seconds came from a place not within the vision of defendant and was struck by defendant's car does not justify an inference of any act of negligence plead in plaintiff's petition.

As to the humanitarian doctrine, plead by plaintiff, there is no evidence as to the rate of speed of defendant's car; there is no evidence from which it can be concluded as to the distance between defendant's car and the plaintiff's bicycle at the time plaintiff could

have seen same; nor is there evidence from which it can be concluded that defendant could by use of every device have stopped his car in time to have avoided the accident.

We have carefully studied the record in this case and have set forth herein, what we consider the most favorable evidence in plaintiff's behalf and conclude there are no facts or circumstances shown which justify an inference even of the allegations of negligence charged. To reach a conclusion that the defendant was in anywise negligent as charged, a jury would have to base its conclusion on presumptions, based upon presumptions, and not upon any evidence presented in the record.

The plaintiff prints for our consideration what is termed "Additional Abstract." This additional abstract sets forth the evidence of one, Forest Gilley. The presentation of this additional abstract is best explained by the following from the original abstract filed in the case, to-wit:

"MR. MADDEN: We have a witness here, Your Honor, which we wish to use at this time. We are offering this witness at this time out of order because he had to leave the city and he is offered upon the understanding between the court and counsel that in so doing we don't waive our demurrer because the testimony of this witness will not be considered upon the demurrer as to plaintiff's evidence and will be only considered as part of the defendant's case, if the case ever reaches that point.

"The testimony of the witness, Forest Gilley, called at this time out of turn and admitted under the above stipulation of counsel is pursuant to the terms of said stipulation omitted from this record."

After the plaintiff rested his case and defendant had offered a demurrer, the jury was excused and the following occurred:

"MR. SWEARINGEN: We request to be allowed to have read the testimony of Mr. Gilley, a witness on behalf of the defendant and to be offered on behalf of the plaintiff."

The court refused plaintiff's request and no objection was made nor exception taken.

The plaintiff now urges that the court had heard the witness and knew what the testimony was and that therefore the court had a right to give consideration thereof in passing upon motion for new trial.

It must be observed here that the original abstract filed in this case was duly signed by plaintiff's attorney as "a full, true and correct bill of exceptions," and that the same was duly attested and so declared by the trial judge. The abstract so signed and attested by plaintiff's attorneys asserts that the evidence of Forest Gilley was, pursuant to the terms of a stipulation, omitted from the record. The original abstract was signed and attested approximately eight months after the court had granted a new trial. We conclude, under these facts, that the trial judge did not take the Gilley testimony into con-

432

sideration in the granting of the new trial; further, that it would have been error for the trial court to have granted a new trial based upon such a consideration.

Under the facts, as they appear, if plaintiff's counsel was of the opinion that the testimony of Gilley would have sustained any allegation of negligence which would have entitled a recovery for plaintiff, then the only door open, we conclude, was by nonsuit.

In Estes v. Nell, 163 Mo. 387, 68 S. W. 724, the opinion states: "A party cannot be allowed to sit by and permit opposing counsel and the court to proceed on the theory that they will not use certain facts in the defense of the cause until judgment is rendered and then bring it forward to overthrow the solemn adjudication of the court."

In Crossland v. Admire, 118 Mo. 87, 24 S. W. 154, it is held that motion for a new trial must be predicated on some error in the trial court that rendered the verdict or finding improper.

The record discloses that when defendant's counsel offered the witness out of time and stated the limitations and conditions thereof, the plaintiff's attorneys remained silent. The further fact being shown that plaintiff's counsel attest the fact of the abstract, which specifically excluded the Gilley testimony as omitted by stipulation from the record, binds plaintiff to the stipulation and precludes the plaintiff from urging the consideration of the Gilley testimony as grounds for a new trial and this court refuses to give consideration of same as supporting the action of the trial court in granting a new trial.

We conclude that the trial court was in error in the granting of a new trial. The judgment is therefore reversed and cause remanded to the trial court with direction to make entry restoring judgment for defendant. All concur.