S.———, Petitioner-Appellant,

v.

S.———, Respondent.

No. KCD 29679.

Missouri Court of Appeals,
Western District.

Feb. 4, 1980.

Motion for Rehearing and/or Transfer
Denied March 3, 1980.

Application to Transfer Denied
April 8, 1980.

Thomas J. O'Brien, Steven Streen, Kansas City, for petitioner-appellant.

Harlan D. Burkhead, Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Kansas City, for respondent.

Before SWOFFORD, C. J., and SHANGLER, DIXON, WASSERSTROM, SOMERVILLE, TURNAGE, and CLARK, JJ.

DIXON, Judge.

This is an appeal by the wife from a judgment and decree in legal separation, the wife challenging the custody award of the youngest son to the husband and the trial court's denial of maintenance. The entry of the judgment of legal separation was subsequently converted to a decree in dissolution, and the pleadings by both the husband and wife conceded that the marriage was irretrievably broken so that, pursuant to § 452.360(1) RSMo 1978, that portion of the decree is final.

The underlying and substantial issue which has engaged the attention of the court is the necessity for the appointment of a guardian ad litem when the paternity of a child is questioned in a proceeding where the child is not directly made a party to the proceeding. This issue has had an extended review in this court. The original divisional opinion was withdrawn and the case submitted to the present panel. After submission, an opinion was circulated which resulted in a dissent based upon the result of the majority opinion in reversing the instant case. The present opinion represents a synthesis of the views of all members of the panel. The importance of the underlying procedural issue is not minimized by the present result which affirms the trial court judgment.

A review of the pleadings in this case reveals the following: The wife filed her petition for dissolution and requested custody of all four children born of the marriage. The husband countered with an answer denying paternity of the youngest son. The wife amended her petition, still requesting custody. The record does not reveal the refiling of the husband's answer to the amended petition, but subsequent proceedings in the case indicate that the issue of the paternity of the youngest child remained an issue throughout the trial. The issue was revealed in a rather haphazard fashion by the evidence in the case.

Adverting to that evidence, the wife was questioned concerning an illicit relationship with a man referred to herein as "M."; she refused to answer any questions concerning the nature of that relationship insofar as it related to sexual impropriety by asserting her rights under the Fifth Amendment. During the cross-examination of the wife, she was questioned concerning her knowledge of a vasectomy performed upon her husband some ten years prior to the conception of the youngest son. She admitted knowledge of that procedure, and there is at least an inference that she knew that a subsequent medical examination indicated the procedure had been successful. The propriety of the manner in which this evidence was before the trial court is in considerable doubt. The husband testified that he had undergone the surgical procedure, and after conception of the youngest child, a doctor told him it was impossible for him to have fathered the child.

Given that posture of the pleadings and the evidence, the trial court entered a judgment finding that the youngest son was a child born of the marriage, apparently upon the assumption that the evidence presented was unsatisfactory to overcome the presumption of legitimacy. That, nonetheless, does not resolve the issue presented by this case for, in this situation, the finding on the issue of paternity is not final and binding, both with respect to the child and with respect to any putative father. O_____ F_____ L_____ v. M_____ R_____ R_____, 518 S.W.2d 113 (Mo.App. 1974), 78 A.L.R.3d 825 (1977). The annotation on this case exhaustively reviews the question and demonstrates that by the weight of authority the child is not bound by a determination of paternity when he is not a party.

In *O____ F____ L____ v. M____ R____ R____*, *supra*, the lower court judgment found the child to be illegitimate. This court decided that unresolved issues with respect to the paternity of the child, which were not finally adjudicated because of the absence of the necessary parties and a guardian ad litem representing the child's interest, were of such magnitude that the court would *sua sponte* raise the question of proper representation of the child and the presence of the necessary parties and reverse the cause for further proceedings. The rationale in part rested upon the principle that the declaration of paternity would not be binding upon the child and that under the "rule of mutuality," "If the judgment is not binding on both it binds neither." *O____ F____ L____ v. M____ R____ R____*, *supra*. That reference to the doctrine of mutuality in the cited case has received comment in a law review article: Cunningham, *Collateral Estoppel: The Changing Role of the Rule of Mutuality*, 41 Mo.L.Rev. 521, 542 (1976), which purports to challenge the rationale, although not the result, of *O.F.L.*: "[T]he recent decision in *O____ F____ L____ v. M____ R____ R____* speaks in terms of collateral estoppel, but is actually a due process case involving what constitutes privity in order to be bound by a prior adjudication, not the issue whether a nonparty may benefit from a prior adjudication." *O.F.L.* does rest on due process grounds, and the discussion therein of collateral estoppel is an additional ground for decision under the law as it then stood.

In any event, the law on the doctrine of mutuality has been drastically changed by *Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713, 719 (Mo. banc 1979). The *Oates* opinion recognized that Missouri had previously strictly adhered to the rule of mutuality in applying the doctrine of collateral estoppel. *Oates* also recognized that the concept of collateral estoppel has been liberalized in many jurisdictions so as to eliminate the requirement of mutuality, following the lead of Chief Justice Traynor in

*Bernhard v. Bank of Am. Nat. Trust & Sav. Assn.*, 19 Cal.2d 807, 122 P.2d 892 (1942). *Oates* further recognized that this court in *LaRose v. Casey*, 570 S.W.2d 746 (Mo.App. 1978), had expressly abolished the requirement of mutuality and had adopted the Bernhard Doctrine which requires that a court in determining whether the application of collateral estoppel is appropriate should consider the following factors: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; and (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication. *Oates* then went on to modify the Bernhard Doctrine by adding to the three factors there listed as controlling still another, fourth factor which should be considered before a stranger to the prior litigation will be admitted to the benefits of the judgment. That fourth requirement, which was adopted by the Missouri Supreme Court from more recent cases in other jurisdictions which are discussed in a number of law review articles including Cunningham, *Collateral Estoppel: The Changing Role of the Rule of Mutuality*, *supra*, calls for consideration of "whether the party against whom collateral estoppel is asserted has a full and fair opportunity to litigate the issue in the prior suit."

Applying the four-prong test set forth in *Oates*, the child would be entitled to the benefit of collateral estoppel respecting his paternity in any litigation which might occur in the future between him on the one hand, and the husband and his heirs at law on the other hand. By definition, in such future litigation, the issue would be the same as that in this case. The present litigation will have resulted in a judgment on the merits. The husband would, of course, have been a party to the present litigation. And finally, the husband has had a full and fair opportunity to litigate the issue of paternity in the present litigation.[1]

---

1. This court is aware of the opinion by the Missouri Court of Appeals, Eastern District, in

*Griffith v. Hammer*, 595 S.W.2d 292 (Mo.App. 1979) The opinion in that case states: "Mis-

The projected result, based on *Oates,* brings Missouri into conformity with the law generally which holds that: "A finding of paternity included in a divorce decree, following adjudication of the issue in the divorce proceeding, is res judicata against the husband or his privies on the question of paternity in a subsequent proceeding involving the husband, or his privies, and the child. . . ." Annot., 78 A.L.R.3d 846, 862 (1977).

This leaves for consideration the question of what effect the decision in this case will have with respect to any future claim of paternity by M or any claim of support or inheritance which might be asserted by the child against M. Under the expanded rule of collateral estoppel of *Oates,* there still remain at least possibilities of future litigation between M and the child as to inheritance or support. The possibilities mentioned could be, in a proper case, strong considerations for insuring proper representation of a child when paternity is in issue and constitute a basis for requiring the appointment of a guardian ad litem in future cases involving paternity issues. The weight of this factor in the instant case will be later addressed.

Other and substantial reasons exist for the adoption of a rule requiring the appointment of a guardian ad litem when, by pleading or evidence, the paternity of a child is questioned. First, the modern trend of authority recognizes the necessity for independent representation of a child when the parents in a dispute over the custody of the child do not, in any proper sense, protect the best interests of the child. An excellent review of all of the Missouri cases concerning the inherent power of the court to appoint a guardian ad litem for minor children is contained in 38 UMKC L.Rev. 1 (1969). Professor Speca, the author of that article, "Protecting the Rights of Children in Divorce Cases in Missouri," collected and analyzed the Missouri case law and the law of other states in asserting in a scholarly fashion the principle that children of divorcing parents have inherent rights that are best served by the appointment of a guardian where those rights are in question. Professor Speca argues that the state has a continuing interest in proceedings involving children and points out that the law is ancient which supports equity jurisdiction over the rights of children and the protection of those rights. The article reviews cases involving the appointment of a guardian ad litem for defendants and plaintiffs and continues by relating the cases involving appointments under less specific situations or involvement of the child's rights in other types of litigation. The specific issue of legitimacy is not discussed in the article, but the reasoning which supports the appointment of a guardian ad litem in the instance of a custody dispute between the parents is even more compelling when the parents have placed in issue the legitimacy of a child to serve their own selfish ends with respect to the maintenance and other incidents of the marital relationship.

Professor Speca's article, outlined above in a very abbreviated fashion, does not stand alone in the literature concerning the rights of children. Attached to this opinion is an appendix demonstrating that the whole issue of representation of children involved in marital disputes is a lively one which has attracted the efforts of many scholars. An examination of the articles listed in the appendix reveals that this is not one of those legal issues in which the scholars are in disarray, but rather is an issue in which all of the scholars urge the courts to adopt, by the case law approach, the protective device of independent representation for children involved in such disputes. The articles have fully researched the law in various jurisdictions, the proposed uniform laws, and the early case law.

souri follows the rule of mutuality of estoppel which requires that the judgment be binding on both parties." *The court in deciding Griffith was apparently unaware of the still recent opinion in* Oates *which had then not yet been* published. In any event, that opinion by the Eastern District of the Court of Appeals cannot take precedence over the Oates decision by the Missouri Supreme Court en banc.

They have clearly demonstrated both the power of the courts to undertake such protective action in the area of children's rights and have demonstrated, beyond cavil, the compelling social necessity for doing so.

The second factor is closely akin to the first one and was fully argued at the submission of this case: the question of the integrity of the fact finding process. No clearer example could be found of a situation where the fact finding process is tainted by the positions of the parties. In this case, the mother obviously asserts illegitimacy to defeat the presumptive father's claim to a custodial relationship with the child. The presumptive father, on the other hand, has asserted the illegitimacy to defeat the mother's claim to maintenance, a fact acknowledged in the motion for rehearing filed by counsel when the original opinion in division was announced. This posture of the parties demonstrates the debilitation of the fact finding process when the parties' interests are not addressed to the central issue, but relate to their own concerns and attitudes with respect to the marital situation.

Case law in other jurisdictions has specifically noted this failure of the fact finding process. In *Ford v. Ford*, 191 Neb. 548, 549–50, 216 N.W.2d 176, 177 (1974), the court announced the need for a guardian ad litem in a divorce case where illegitimacy was in issue. The two children, independent of the dispute between the parties, were found to have a vital and enduring interest affecting their own lives, and the court pointed out that the adversary process conducted in the interests of the parents failed to properly test and evaluate the evidence concerning legitimacy. In a Wisconsin case, *Riemer v. Riemer*, 85 Wis.2d 375, 270 N.W.2d 93 (App.1978), the court went further and found that where the legitimacy of one child of several was involved, the children needed separate repre-

sentation since there the issues of inheritance created a conflict of interest for a single guardian.

The third and final factor concerns the administration of justice in cases involving legitimacy of children. Unless the law provides some restraint upon the parents who, in their marital war, blind themselves to the consequences of such action and raise issues of legitimacy without concern for either the truthfulness of such claims or potential harm to the child involved, then the ignoble situation presented by this case will continue to recur. By requiring that a guardian ad litem be appointed when the issue of a child's legitimacy is raised, the court can be satisfied that the fact finding process will be protected, the adjudication will, to the extent possible, become a final adjudication of the issue, and the parents will not lightly raise, for tactical or other advantage, issues of legitimacy essentially spurious in nature. As with most issues, finality is of considerable importance and the requirement of representation of the child will achieve that end as well as ameliorate some of the difficulties mentioned.[2]

Based upon this analysis, this court is convinced that the rule announced in *O____ F____ L____ v. M____ R____ R____*, supra, is sound and should be extended as a matter of procedure to any case where, by pleading or evidence, the paternity of a child is at issue. The failure of the trial court to so appoint a guardian ad litem is error which, if properly raised or occurring in circumstances justifying sua sponte relief, will result in reversal.

██ The question of the disposition to be made in this case is one of application of the rule announced consistent with broad equitable principles. When dealing with the most sensitive issue that can be raised concerning a child—that of paternity—this court can unquestionably raise sua sponte

2. On the issue of finality, some question was raised in the oral argument as to the power of the court to join the putative father as a party. This court has recently held that when property interests are at stake in a divorce suit, additional parties who are strangers to the divorce suit may be added as parties. *Ravenscroft v. Ravenscroft*, 585 S.W.2d 270, 275 (Mo.App.1979). It would be strange indeed if such joinder were permitted as to property interests and denied where fundamental rights of paternity were involved.

the issue presented by the factual background of this case. That is the clear import of O___ F___ L___ v. M___ R___ R___, *supra*. However, since the origin of that power is equitable, it must be exercised in accordance with the cardinal rule of the case law concerning rights of children in custody and related cases, that the best interests of the child are of paramount importance. A consideration of the facts of the instant case requires this court to conclude that in the instant case the best interests of the child would not be served by reversing and remanding the case for appointment of a guardian ad litem and a relitigation of the issue of paternity.

There are many reasons for that determination in the instant case. First to be considered is the effect of the present adjudication of paternity as it might affect the child in the future. Those potential issues, insofar as the husband is concerned, have been earlier noted.

On the question of potential litigation with M, the rights of the child are still preserved since there is no question collateral estoppel does not bar such future actions between M and those in privity with him and the child. This leaves for consideration the question of what effect the decision in this case will have with respect to any future claim of paternity by M or any claim of support or inheritance which might be asserted by the child against M. The chances of M claiming paternity in the future, after having been silent in that respect for so many years, seems highly unlikely. It is also highly speculative whether the child will ever have occasion to make claim for support against M or demand heirship from him. To be weighed against those unlikely possibilities is the certainty of emotional disruption to all parties concerned if this case be returned for retrial and for the addition of the child and M as parties.

Also, there should be considered the possibility that if this court insists upon a retrial, the father may very well be declared not to be the biological father and that the fact finder may also believe the evidence insufficient upon which to declare M to be the father. Should that possibility arise, the child would have no legal father to whom to look for support. That certainly would not be in "the best interests of the child."

Still another very unfortunate possibility should be considered. It may be that a retrial would produce a determination that M is the legal father. That would result in the substitution of a reluctant and resistant new parent who, in all likelihood, would contribute only the barest amount of financial support which he could be forced to give under legal coercion, and it would be reasonably certain that he would give no real time or attention to the child. That substitution would be forced upon the parties despite the fact that respondent is willing and indeed eager to continue the support and companionship which he has been furnishing the child for more than eight years in a manner which is all too rare. The net effect is that the child now has the best situation that he can achieve. He is presently in the custody and care of a loving father.[3] The child has everything to lose and nothing to gain from relitigation on the issue of paternity.

When all of these factors are taken into account, the remote possibility of future litigation between the child and M cannot be considered sufficient reason to reopen litigation on the issue of paternity.

In the present case, the trial court found in favor of legitimacy. In every one of the cases where the court has found appointment of a guardian necessary (*O.F.L.*; *Ford*; and *Riemer, supra*; and *J. M. L. v. C. L.*, 536 S.W.2d 944 (Mo.App.1976)), the trial court had found against legitimacy and had bastardized the child. So also in a very recent case, *Amber B. v. Leland S.*, 592 S.W.2d 201 (Mo.App.1979), the trial court

---

3. Even at the time of trial, when the husband was still challenging the child's biological paternity, he nevertheless testified that under the law and in his heart he acknowledged him to be his son.

had bastardized the child in question. Most certainly, different considerations are involved where an appellate court is faced with a dissolution decreeing illegitimacy as against a case, such as the present one, where the trial court has declared the child to be the legitimate offspring of the marriage.

There is an even more compelling reason for not applying the rule announced to require a reversal in this case. The husband did challenge his paternity in the trial court and could have continued that position here. However, he did not appeal the trial court's finding that he was the father of the child. Moreover, he has now fully accepted that finding, as plainly appears from the following colloquy which occurred in the course of oral argument on rehearing before this court:

> "JUDGE WASSERSTROM: Mr. Burkhead, taking the case the way it stands right now, taking the decree as it stands, do you and your client accept that as a declaration, a binding declaration that Mr. S. is the legitimate father subject to all the obligations of fatherhood?
>
> MR. BURKHEAD: [respondent's counsel]: Yes, I consider it to be binding upon Mr. S. . . . ."

With respect to the wife, she has not by any proper point challenged the trial court's finding of paternity. Even more important, however, she has no standing to now argue non-paternity. This follows from the fact that throughout the trial she asserted that her husband was the father. Not until after the evidence was closed and the trial court found paternity comportable to her position did she change holds. Then, in her motion for new trial, she completely reversed her position and claimed for the first time that her husband was not the biological father of the child.

In so attempting to change theories, the wife violated the settled rule that a party cannot take a position on new trial different from that which he took during the course of the trial. *Carter v. Butler,* 264 Mo. 306, 174 S.W. 399 (banc 1915);

*Bumgarner v. Ekstrum,* 228 Mo.App. 424, 67 S.W.2d 520 (1934). By like token, the wife cannot ask this case to be reviewed here on a theory different from the one on which she proceeded in the trial court. *Sydney v. Coca-Cola Co.,* 569 S.W.2d 11 (Mo.App. 1978); *Service Construction Co. v. Nichols,* 378 S.W.2d 283 (Mo.App.1964); *Morris v. Kansas City,* 391 S.W.2d 198 (Mo.1965).

. A reversal here would only serve the mother's interest in eliminating her husband as a custodian of the child. Her willingness to concede the illegitimacy of the child lends little support to her claim to be the better custodial parent. In the circumstances of this case, the reversal need not be ordered.

It is truly unfortunate that a child's circumstances of birth must be explored in a hearing, but unless a rule is laid down which eliminates such disputes in all but the most serious cases where the issue should, in fact, be resolved, then other children similarly situated will be exposed to the same sort of parental misconduct, utilizing the child for the momentary gain of one parent or the other in the matrimonial dispute. Because of that fundamental concern for the welfare of the child, as well as the other reasons here advanced, this court adopts the concept of *O.F.L., supra,* that in any case where, by pleading or evidence, the paternity of a child becomes an issue, the trial court shall appoint a guardian ad litem in all future cases. The propriety of ruling in a prospective manner on adjective law is settled. *Dietz v. Humphreys,* 507 S.W.2d 389 (Mo.1974).

The wife also challenges the denial of maintenance. That issue may easily be laid to rest. The trial court fully discussed the issue in his remarks after the hearing and demonstrated his awareness of the factors to be considered in awarding maintenance as mandated by § 452.335(2). There is no question that the evidence supports his findings. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). The judgment is affirmed.

All concur.

## APPENDIX

A growing body of judicial thought supports the need for the appointment of a guardian ad litem where a child's interests are at stake in litigation to which it has not been made a party.

(1) In a variety of circumstances, there is really no party which can adequately represent the child, and these articles suggest that there is a need to provide independent legal representation for such children: Drinan, *The Rights of Children in Modern Family Law*, 2 J.Fam.L. 101, 107 (1962); Foster & Freed, *A Bill of Rights for Children*, 6 Fam.L.Q. 343 (1972); J. Goldstein, A. Freud, A. Solnit, Beyond the Best Interests of the Child (1973); Hansen, *Guardians Ad Litem in Divorce and Custody Cases: Protection of the Child's Interests*, 4 J.Fam.L. 181 (1964); Hansen *The Role and Rights of Children in Divorce Actions*, 6 J.Fam.L. 1 (1966); Levin, *Guardian Ad Litem in Family Court*, 34 Md.L.Rev. 341 (1974); Speca and Wehrman, *Protecting the Rights of Children in Divorce Cases in Missouri*, 38 U.M.K.C.L.Rev. 1 (1969).

Inker and Peretta, *A Child's Right to Counsel in Custody Cases*, 55 Mass.L.Q. 229 (1970) reprinted in The Young Minority I ABA 1974, emphasizes the due process and equal protection arguments for a child's right to counsel by reference to the juvenile law where such safeguards are already guaranteed.

(2) Genden, *Separate Legal Representation for Children: Protecting the Rights and Interests of Minors in Judicial Proceedings*, 11 Harv.C.R.–C.L.L.Rev. 565 (1976) discusses particular instances where there would exist an easily identifiable need for the court to appoint a child advocate. The sources of authority for the appointment of child advocates are traced, and the author finds constitutional support through *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), by statutory authority such as The Uniform Parentage Act and The Uniform Marriage & Divorce Act, and in the court's inherent judicial power citing Podell, The Why Behind Appointing Guardians Ad Litem for Children in Divorce Pro-

ceedings, 57 Marq.L.Rev. 103 (1973) for such appointment.

(3) Note, Protecting the Interests of Children In Custody Proceedings: A Perspective on Twenty Years of Theory and Practice in the Appointment of Guardians Ad Litem, 12 Creighton L.Rev. 234 (1978). Special criticism is levied against the judicial process in divorce and custody proceedings because of the adversarial nature of the proceeding. Paraphrasing Levin, *supra*, the author points out that without independent representation of the child's interests, the adversary system cannot properly effectuate the legal test of what is in the best interests of the child. The analysis emphasizes the inherent weakness of the adversary system when attorneys for competing parties have in effect a conflict with the interest of the child. See also, Note, Separate Representation of Children in Custody, 6 Adelaide L.Rev. 466 (1978).

(4) The Uniform Marriage and Divorce Act § 310 (1971) advocates *discretionary* appointment by the court of an attorney to represent the interests of a minor or dependent child regarding support, custody, or visitation.

*Mandatory* appointment is advocated by a Divorce Reform Act, 5 Harv.J.Legis. 563, 580 (1968) and by the version of the Uniform Marriage and Divorce Act adopted by the Family Law Section of the American Bar Association, 7 Fam.L.Q. 135, 154 (1973).

(5) The article by Speca and Wehrman, *Protecting the Rights of Children in Divorce Cases in Missouri*, 38 U.M.K.C.L.Rev. 1 (1969) urges that the state is a party to all divorce actions and as part of its duty to protect the public interest in children, the court has the power to appoint a guardian ad litem and to permit the child to become an intervenor in Missouri divorce litigation via the inherent power of the court incident to its equitable jurisdiction. See also, J. Shouler, A Treatise on the Law of Domestic Relations § 452 (4th ed. 1889).

(6) Berdon's, A Child's Right to Counsel in a Contested Custody Proceeding Resulting from a Termination of the Marriage, 50

Conn.B.J. 150 (1976) discusses the statutory authority in Connecticut for appointment of a guardian ad litem and the inherent power doctrine. The author here points to the failure of the adversary process to vindicate the parens patriae theory of the state's interest in the welfare of the child. Also noted are constitutional grounds for appointment of an independent advocate. See Note, A Case for Independent Counsel to Represent Children in Custody Proceedings, 7 New England L.Rev. 351 (1972).

(7) In addition, see Coyne: Who Will Speak For The Child?, The Rights of Children, pp. 193–211, and Note, Independent Counsel for Children in Custody Cases, 42 Sask.L.Rev. 295 (1977–78).