**P.L.K., Appellant,**

v.

**D.R.K., Respondent,**

**L.T. and N.W.K., Defendants.**

No. 61844.

Missouri Court of Appeals,
Eastern District,
Division One.

March 30, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 12, 1993.

Melody E. Noel, Daniel R. Sokol, St. Louis, for appellant.

Charles W. Niedner, St. Charles, Andrew Howard Koor, Guardian Ad Litem, O'Fallon, for respondent.

CRIST, Judge.

N.W.K. (Child), through his guardian ad litem, filed a petition for declaration of a father and child relationship between him and his putative father and declaration of the nonexistence of a father and child relationship between him and his presumed father. Mother appeals the trial court's granting of Child's petition. We reverse.

On November 5, 1986, the Circuit Court of St. Charles County entered a decree of dissolution between P.L.K. (Mother) and D.R.K. (Presumed Father). Child was born during the marriage on April 5, 1985. On August 1, 1990, Presumed Father filed a two-count petition with the Circuit Court of St. Charles County with a motion to modify the dissolution decree and a petition for declaratory judgment and fraud. He alleged Mother told him he was not the biological father of Child. His petition for declaratory judgment and fraud asked, *inter alia*, the court to determine the paternity of Child. He asserted L.T. (Putative Father) could be the biological father of Child and added him as a defendant in the case. On January 1, 1991, the trial court granted Presumed Father leave to add Child as a third-party defendant and appointed a guardian ad litem for Child. Upon Mother's motion, the two causes of action were severed. The trial court ordered blood tests for Child, Mother, Presumed Father, and Putative Father. These blood tests show there is a 99.93% chance that Putative Father is the biological father of Child and that Presumed Father is excluded as the biological father of Child. However, following the blood tests, the trial court granted Mother's motion to dismiss because paternity had already been adjudicated in the prior dissolution decree and Presumed Father was precluded from raising the issue again by collateral estoppel. Following this dismissal, Child was granted leave to file additional pleadings in the case.

On June 3, 1991, Child, through his guardian ad litem, filed an action asking the trial court to find the nonexistence of a father and child relationship between him and Presumed Father and to declare a father and child relationship between him and Putative Father. Child also requested child support from Putative Father. Presumed Father then requested the same relief as Child. Mother then filed a motion to dismiss asserting Child's petition was barred by the statute of limitations in

§ 210.826.1(2), RSMo Supp.1992. The trial court denied Mother's motion to dismiss. Child's petition was heard on January 14, 1992. The trial court issued its judgment finding Putative Father to be the biological father of Child and ordered him to pay $386 per month in child support. The guardian ad litem, Andrew H. Koor, was awarded attorney's fees in the sum of $2,538: Presumed Father to pay $900, Mother to pay $450, and Mother and Putative Father to split the remaining $1,188. Mother appeals the judgment. Presumed Father responds with Child adopting his brief.

Mother's first point on appeal is the trial court erred in overruling her motion to dismiss Child's petition because Child's paternity action was untimely under the statute of limitations in § 210.826. We agree with Mother.

■ The Uniform Parentage Act (UPA), enacted July 15, 1987, provides the exclusive means through which paternity may be determined. *Poole Truck Lines, Inc. v. Coates*, 833 S.W.2d 876, 878[1] (Mo. App.1992); and *Snead by Snead v. Cordes by Golding*, 811 S.W.2d 391, 395[9] (Mo. App.1991). Section 210.826, RSMo Supp. 1992, provides the guidelines for when and by whom an action for paternity may be brought. Under this statute, Child could only bring such an action in four different scenarios. First, he could bring an action to declare the existence of a presumed father and child relationship under § 210.-822.1(1), (2) or (3) *at any time*. § 210.826.-1(1) (emphasis added). Second, Child could bring an action to declare the nonexistence of a presumed father and child relationship, but only "within a reasonable time after obtaining knowledge of relevant facts, *but in no event later than five years after the child's birth.*" § 210.826.1(2) (emphasis added). Third, he could bring an action to declare the existence or nonexistence of a father and child relationship presumed under § 210.822.1(4) at any time. § 210.-826.2. Fourth, if he has no presumed father, he could bring an action to declare the existence of a father and child relationship within eighteen years from his date of birth. § 210.826.3 and § 210.828.1. Child does not fall within any of these scenarios. He has a presumed father. Therefore, his

action to declare the nonexistence of his father and child relationship with Presumed Father must have been brought no later than his fifth birthday. Section 210.-826.1(2). Child was born on April 5, 1985 and brought his action on June 4, 1991, more than five years after his birth. Therefore, the trial court should have sustained Mother's motion to dismiss.

■ Presumed Father and Child argue the statute is unclear and Child can bring the action at any time. However, this case is similar to that of *M.R.D. by P.D. v. F.M.*, 805 P.2d 1200 (Colo.App.1991), where a child, with her mother as next friend, and the child's presumed father brought an action against the child's putative father for a declaration of paternity and child support. The Colorado court held the child was procedurally barred from bringing the paternity action because it was untimely, i.e., not brought within five years of her birth. *Id.* at 1202[1]. The court reasoned the child was required to disestablish her presumed father and child relationship before she could establish another one. *Id.* They also pointed to the strong presumption of legitimacy the Uniform Parentage Act accords a child born in wedlock. *Id.* at 1202[3]. We agree with the Colorado court's reasoning. Colorado has also adopted the Uniform Parentage Act and Colorado Revised Statute § 19–4–107(1)(b) is similar to § 210.826.1(2), which indicates a presumption of paternity must first be rebutted before paternity by another man can be established. § 210.826.1(2) ("After the presumption has been rebutted, paternity of the child by another man may be determined in the same action, if he has been made a party."); *See also, Miller v. Sybouts*, 97 Wash.2d 445, 645 P.2d 1082, 1084[1] (banc 1982) (UPA required mother to disestablish presumptive paternity of divorced husband prior to establishing paternity by another). Further, in Missouri, there is no stronger presumption than a child born during marriage is a legitimate child. *L.M.K. v. D.E.K.*, 685 S.W.2d 614, 616[6] (Mo.App.1985); *See also, Michael H. v. Gerald D.*, 491 U.S. 110, 119–131, 109 S.Ct. 2333, 2340–2346, 105 L.Ed.2d 91 (1989) (presumption of legitimacy does not

violate due process rights of putative father or child).

■ In addition, there are valid reasons for having such a time limitation when Child already has a presumed father. The court in *Interest of K.B.* stated:

> The statute obviously recognizes that a mistaken designation of biological fatherhood can be rectified only within five years of the child's birth. After that, the importance of the correct identity of a sperm donor gives way to the importance of the relationship between the child and the individual who, though not perhaps the sperm provider, is the one who has provided all of those daily, monthly, and yearly minute and major contributions that define the essence of fatherhood.... After five years, biological fatherhood becomes an irrelevancy.

*Interest of K.B.*, 490 N.W.2d 715, 719 (N.D. 1992) (Levine, J., concurring). This reasoning is especially probative when paternity has already been adjudicated in a dissolution proceeding and Child has a "legal" father who is responsible for his support. Also, Child will be entitled to the benefit of collateral estoppel in any future litigation concerning paternity between him and Presumed Father and Presumed Father's heirs. *S.___ v. S.___*, 595 S.W.2d 357, 359–60[2] (Mo.App.1980).

■ Presumed Father and Child also argue the statute of limitations in § 210.826.-1(2) is tolled until Child is twenty-one due to Child's infancy pursuant to § 516.170, RSMo Supp.1992. However, that tolling statute is specifically limited to civil actions outlined in §§ 516.100 to 516.370. *See,* § 516.170. A paternity action is not within those statutes. Further, Presumed Father and Child fail to cite any authority for their proposition. Rule 84.04(d).

Therefore, we reverse the trial court's decision. We need not consider Mother's second point on appeal regarding error in an offer of proof due to this reversal.

■ Mother finally contends the trial court erred in denying her motion for release of guardian ad litem fees deposited. In the same point, she also points to error in the trial court's denial of her Motion for Sanctions pursuant to Rule 55.03. However-er, because Mother only cites authority for her point about sanctions, she has waived her former argument. *Wright v. Martin,* 674 S.W.2d 238, 242[8] (Mo.App.1984); and Rule 84.04(d). Mother also raises for the first time a separate issue in her reply brief concerning the jurisdiction of the trial court to even entertain the motion because of an alleged imperfection in the appointment of the guardian ad litem. Her failure to raise this issue prior to her reply results in waiver. *Kramer v. Mason,* 806 S.W.2d 131, 134[7] (Mo.App.1991). In any event, this issue is purely procedural and is not jurisdictional. *Mueller v. Mueller,* 634 S.W.2d 578, 579[1] (Mo.App.1982).

■ Even so, our reversal of the trial court's judgment leaves the question of how to dispose of the guardian ad litem fees in the case. Clearly, the fees prior to Child's petition are warranted. In addition, the guardian ad litem fees for Child's petition are also warranted. There is some question of whether Child's failure to bring the second suit would have resulted in his being collaterally estopped from raising the issue of paternity in the future. *See, Landoll by Landoll v. Dovell,* 779 S.W.2d 621, 626[8] (Mo.App.1989) (child who was party to dissolution proceeding was bound by judgment); *Gipson v. Enright,* 753 S.W.2d 122, 124[2] (Mo.App.1988) (if child is made a party to a suit and a guardian ad litem is appointed, child could be collaterally estopped). We have the power to finally dispose of this case. Rule 84.14. Furthermore, we have the authority to fix attorney's fees in cases in which the record is sufficiently developed. *Sutton v. Schwartz,* 808 S.W.2d 15, 23[17] (Mo.App. 1991); *See,* § 210.842. The guardian ad litem testified he worked a total of 27.81 hours and his usual rate of compensation is $90 per hour. Guardian ad litem fees, therefore, total $2,502.90. Because of the circumstances of this case, we divide these fees evenly between Mother and Presumed Father, with credits for amounts which each has previously deposited with the trial court. All other costs are also taxed evenly between Mother and Presumed Father.

■ As for Mother's argument concerning sanctions, we find the trial court did

not err in denying Mother sanctions. Rule 55.03 authorizes the trial court to impose sanctions if action is not "well grounded in fact and is [not] warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law ..." or if petitioner brings the action for an "improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." The trial court did not abuse its discretion in denying sanctions. A good faith argument could be made under the circumstances of this case. Furthermore, there is no indication Presumed Father or the guardian ad litem brought this suit merely to harass her. Indeed, it is more likely they pursued these paternity actions to rectify a situation which Mother created. Therefore, sanctions are not warranted.

Reversed. Guardian ad litem fees of $2,502.90 to be paid equally by Mother and Presumed Father. Cost of appeal taxed evenly between Mother and Presumed Father. No sanctions allowed.

AHRENS, P.J., and REINHARD, J., concur.