**STATE of Missouri, ex rel. Quinton D. LUCAS, et al., Appellants,**

v.

**Thomas O. WILSON, et al., Respondents.**

**No. WD 53699.**

Missouri Court of Appeals,
Western District.

Submitted Sept. 4, 1997.

Decided Jan. 20, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 3, 1998.

Application to Transfer Denied
April 21, 1998.

Lara B. Webb, Asst. Pros. Atty., Jackson County, Kansas City, for appellants.

Elister H. Dewberry, Kansas City, for respondents.

Before SMART, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

SMART, Judge.

The State appeals the dismissal of its petition to declare paternity and procure child support on behalf of Quinton Lucas, who was born in August, 1984. On November 7, 1996, the trial court dismissed with prejudice the State's amended petition for paternity and support on the ground that the action was time-barred under Missouri statutes and the Missouri Constitution. Because we conclude that the claim was governed by the five-year statute of limitations contained in former § 210.826.1(2), and that the limitation period expired before this action was filed, we affirm the judgment.

## I. Facts

Quinton Lucas ("Quinton") was born to Quintanella Lucas ("Mother") on August 19, 1984. At the time, Mother was married to Ricardo Lucas ("Lucas"). Mother testified that Lucas began an eighteen-year prison term in 1982 or 1983. It appears that Ricardo Lucas was in prison at the time Quinton was conceived. This marriage was dissolved on November 28, 1990. On May 4, 1995, the State filed a petition on the behalf of Quinton for the declaration of paternity and for support under the Uniform Parentage Act ("UPA"), § 210.817 et seq., RSMo 1994, in Jackson County Circuit Court. The petition alleged that either Lucas or Thomas Wilson ("Wilson") was the natural father of Quinton. Wilson filed an answer in which he denied all counts. Lucas never answered. Blood tests excluded Lucas as the father and reported

Wilson's probability of paternity as 99.85%. A second blood test reported that Wilson had a 99.99% probability of paternity.

Both parties were granted leave to amend their pleadings in September, 1996, after the State realized that it had neglected to plead that Lucas was the presumed father under § 210.822.1(1) RSMo. With his motion to amend, Wilson filed a motion to dismiss based on the affirmative defense of an expired· statute of limitations (§ 210.826.1(2), RSMo Supp.1988) and the unconstitutionality of the retroactive application of the statute of limitations as amended in 1993.

On November 5, 1996, the circuit court conducted a hearing on Wilson's motion to dismiss. After this hearing, the circuit court made specific findings of fact and conclusions of law. The court found that Lucas was the presumed father and that the State brought its action more than five years after Quinton was born. The court concluded that application of the amended statute of limitations in § 210.826.1, RSMo 1994 (action to declare existence or nonexistence of paternity may be brought at any time) would violate the Missouri Constitution's prohibition against retroactive application of statutes. The court ruled that the five-year statute of limitations in pre–1993 § 210.826.1(2), RSMo Supp.1988 applied to this case. The court dismissed the claim with prejudice based on the expired statute of limitations.

## II. Statutory Background

In 1987, the Missouri legislature adopted the UPA, which first appeared at § 210.817–.852, RSMo Supp.1988. The original UPA, as adopted by Missouri, contained different statutes of limitations for paternity actions, depending on whether the action was brought to establish the existence or nonexistence of a presumed paternal relationship, and on whether the child had a presumed father as defined by the statute.

The original UPA established a rebuttable presumption of paternity where a man was married to the child's natural mother when the child was born or if the child was born within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or dissolution. § 210.822.1(1), RSMo Supp.1988. The child, natural mother, presumed father, and division of child support services ·were given the right to bring an action "at any time" for the purpose of establishing the existence of a presumed paternal relationship. § 210.826.1(1) RSMo Supp.1988. The next sub-subsection gave those same persons the right to file an action for the purpose of establishing the nonexistence of a presumed paternal relationship **"only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, but in no event later than five years after the child's birth."** § 210.826.1(2) **RSMo Supp.1988** (emphasis added). In a later section, the statute gave parties, including a man alleging to be the father, the right to bring an action to determine the existence of a paternal relationship with respect to a child with no presumed father. § 210.826.3 RSMo Supp.1988. The next section of the statute limited actions "to determine the existence of the father and child relationship as to a child who has no presumed father" to eighteen years after the child's birth. § 210.828.1 RSMo Supp.1988.

In 1993, Missouri's version of the Uniform Parentage Act was amended to provide that:

[a] child, his natural mother, a man presumed to be his father under subdivision (1), (2), or (3) of subsection 1 of section 210.822, a man alleging himself to be a father or the division of child support enforcement may bring an action at any time for the purpose of declaring the existence or nonexistence of the father and child relationship presumed under subdivision (1), (2) or (3) of subsection 1 of section 210.822.

§ 210.822(1), RSMo 1994. The State argues that this amended statute of limitations applies retroactively, thereby permitting a paternity action to be filed "at any time." First, however, we consider the pre–1993 statute, since the action would not be time-barred if it is not time-barred under the pre–1993 statute.

## III. Classification of Action under the Pre–1993 Statute

The State argues that even if the 1987 UPA applies to this action, the five-year stat-

ute of limitations does not apply to this action because the State's petition was not an action to declare "the nonexistence of a presumed parental relationship" but instead sought a declaration of the existence of the presumed paternal relationship between Lucas and Quinton. The State's argument is faulty. While it is true that the State sought a declaration of the presumed father's paternity in the original petition, it is also true that the State alternatively sought a declaration of Wilson's paternity in the same petition. The original petition alleged that "Respondent Thomas Wilson or Respondent Ricardo C. Lucas is the father of said child," and requested the declaration of paternity without regard to a specific respondent. The amended petition, filed after blood tests excluded Lucas as the father, alleged that Wilson rather than Lucas was Quinton's actual father. Logically, the establishment of Wilson's paternity would necessarily rebut the presumption that Lucas was Quinton's father. There was absolutely no reason to join Wilson as a defendant unless the State anticipated the possibility of proving that Wilson rather than Lucas was Quinton's biological father. Alternative pleading does not change the essence of this action. Moreover, the amendment clarified that this was an action to declare the non-existence of presumed paternity and the paternity of a man other than the presumed father.

The fact of the marriage at the time of birth is sufficient to invoke the presumption of paternity in this case. § 210.822.1(1) RSMo Supp.1988. The statute requires nothing more for the presumption to apply. The presumption is rebuttable by clear and convincing evidence under § 210.822.2. While circumstantial facts related to the conception of the child may be relevant to the refutation of the presumption, they are not relevant to the invocation of the presumption. We decline the State's invitation to follow the lead of some other UPA jurisdictions in engrafting a cohabitation requirement onto this statutory presumption.[1] To do so would be to cross the line separating statutory construction from judicial legislation.[2] Consequently, regardless of where Lucas may have been at the time Quinton was conceived, the statutory presumption was applicable.

Because Quinton had a presumed father when the State's original petition was filed in 1995, refutation of the presumption of paternity was a necessary part of the State's action to establish paternity as to anyone other than the presumed father. On the face of the statute, the five-year limitations period applies to actions brought for the purpose of declaring the nonexistence of the relationship. § 210.826.1(2) RSMo Supp.1988. Where the child has a presumed father, any action to establish the paternity of another man is necessarily an action brought for the purpose of declaring the nonexistence of presumed paternity, and the five-year limitations period would seem to apply.

---

1. The only other jurisdiction the State points to is California. Specifically, the State cites *Michael M. v. Giovanna F.*, 5 Cal.App.4th 1272, 7 Cal. Rptr.2d 460, 466 (1992); *City and County of San Francisco v. Strahlendorf*, 7 Cal.App.4th 1911, 9 Cal.Rptr.2d 817, 818 (1992); *Steven W. v. Matthew S.*, 33 Cal.App.4th 1108, 39 Cal.Rptr.2d 535, 538 (1995). These cases are not persuasive, however, for the simple reason that the then applicable California statute expressly required cohabitation for the presumption of legitimacy to apply. Cal. Evid.Code § 621 (West Supp.1990). It was this same presumption that the United States Supreme Court upheld against a due process challenge in *Michael H. v. Gerald D.*, 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989).

2. We similarly reject the State's argument, which is based on a fanciful reading of the holding of *P.L.K. v. D.R.K.*, 852 S.W.2d 366 (Mo.App.1993), that the only actions brought for the purpose of establishing the nonexistence of presumed pater-

nity are actions in which the presumed father is also the adjudicated father. While it is true that the presumed father in *P.L.K.* had also been adjudicated the child's father in the prior dissolution action, nowhere did the court in *P.L.K.* suggest that it was defining actions to establish the nonexistence of presumed paternity exclusively as actions brought to relitigate the presumed father's adjudicated paternity. In fact, the court in *P.L.K.* rested its holding expressly on the proposition that "in Missouri, there is no stronger presumption than a child born during marriage is a legitimate child." *Id.* at 368. The statute itself says nothing about a prior adjudication of paternity being required for the presumption of paternity to apply. If the presumed father were a party to both actions, to refer to the presumption as a "presumption" would make no sense: the presumed father would be collaterally estopped from relitigating his paternity.

The State advances the view that, on grounds of legislative intent and public policy, putative fathers such as Wilson may not invoke the five-year statute of limitations once the presumption of paternity has been rebutted. Conceding that there is no Missouri authority for this view, the State points to the decision of the North Dakota Supreme Court in *In the Interest of K.B.*, 490 N.W.2d 715 (N.D.1992).[3] In that case, the child was born five years before the natural mother and presumed father divorced in 1981, and in 1989 state social services brought an action to collect support from the presumed father. *Id.* at 716. In this first proceeding, the presumed father claimed that he was not the biological father of the child, a defense that was vindicated through genetic testing. *Id.* The trial court consequently ruled that the presumed father was not the child's father. *Id.* The state and the child's guardian ad litem then commenced an action against the putative father, who successfully raised the five-year statute of limitations as an affirmative defense before the trial court. *Id.* The North Dakota Supreme Court reversed, holding that the putative father was not permitted to use the five-year statute of limitations to avoid his parental obligation. *Id.* at 718. The court pointed out that since the putative father was not a party to the prior proceeding, he would be free to relitigate the issue of presumed paternity. *Id.* Noting its own dicta in a previous case, the court stated that, after the presumption of paternity is rebutted, the paternity of another man could be established in the same action if the man has been made a party in that action, or in a different action using the longer limitations period for actions where the child has no presumed father. *Id.* To allow the putative father to avail himself of the five-year statute of limitations, the court reasoned, would be contrary to legislative intent and public policy, specifically, protection of the best interests of the child. *Id.*

It was not the intent of the Legislature in enacting the five-year limitation period ... to provide putative biological fathers with a shield to avoid their duty to support their children. We cannot condone a result that would leave the child without a legally established father and effectively preclude any possibility of establishing paternity in the future.

*Id.* (statutory citation omitted).

We cannot say that the State's argument is without appeal. The five-year limitations period for actions to establish the non-existence of presumed paternity reflects the legislature's intent to preserve existing paternal relationships rather than to further the license of putative fathers. *See K.B.*, 490 N.W.2d at 719 (Levine, J., concurring). We have no desire to keep the State from recovering the cost of support for the child from the father. Nevertheless, the intent of the legislature as reflected in the plain and ordinary meaning of the text of the statute trumps our speculation as to the twists and turns of the public policy underlying the statute. *See Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15, 19 (Mo. banc 1995). The plain and ordinary meaning of the text at issue here is clear: the limitations period in § 210.826.1(2) applies to the action, not to any particular party. Moreover, if the purpose of the five-year limitations period is to protect existing paternal relationships, the purpose arguably is served regardless of the identity of the party invoking the statute of limitations as a defense. Indeed, in *P.L.K. v. D.R.K.*, 852 S.W.2d 366, 369 (Mo.App.1993), the court permitted the natural mother to invoke the statute of limitations to prevent the putative father from bringing an action to establish his paternity of a child having a presumed father more than five years after the child was born.[4]

Other Missouri authority is also contrary to the State's argument. In *Michigan Dept. of Soc. Servs. ex rel. D.H. v. K.S.*, 875 S.W.2d

---

**3.** The court decided the case under North Dakota's codification of the UPA, specifically N.D. Cent.Code § 14–17–05(1)(b), which corresponds to prior § 210.826.1(2), RSMo.

**4.** Both *P.L.K. and Michigan Dept. of Soc. Servs. ex rel. D.H. v. K.S.* have been called into question

on grounds related to the issue of the exclusive applicability of the UPA as to paternity issues. *See State ex rel. State of Illinois v. Schaumann*, 918 S.W.2d 393, 397 (Mo.App.1996). However, both cases remain pertinent for purposes of the issue discussed herein.

597 (Mo.App.1994), the natural mother had given birth to a child 297 days after her marriage to presumed father was dissolved, in 1985. In 1992, mother, a Michigan resident, filed a petition with the Michigan Department of Social Services to establish the paternity of her child and to obtain support from the putative father, a Missouri resident. Michigan social services filed an action in Missouri under the Uniform Reciprocal Enforcement of Support Act (URESA). *Id.* at 599. The trial court granted the putative father's motion to dismiss based on the expiration of the five-year limitations period in § 210.826.1(2). On appeal, the court held that, since the presumption of paternity had not been rebutted prior to filing, the trial court had properly applied the five-year statute governing actions to declare the nonexistence of the relationship. *Id.* at 600. Thus, the court in that case allowed the putative father to assert the five-year statute of limitations.

Implicit in the State's position is the assumption that, once there was clear and convincing evidence rebutting the presumption that Lucas was Quinton's father, the action was transformed from an action to declare the nonexistence of the relationship under § 210.826.1(2) to an action to establish the paternity of a child with no presumed father under § 210.826.3, with the corresponding limitations period which runs until the child's eighteenth birthday.

Even assuming for the sake of argument that the successful refutation of the presumption of paternity in a proceeding to which the presumed father is a party would then clear the way for a separate proceeding under § 210.826.3 against a putative father not a party to the previous action in order to establish the paternity of the child as a child with "no presumed father",[5] it does not follow that the State must be able to take advantage of the longer statute of limitations in this action. The factual difference between

the present case and *K.B.* suggests the rationale. In contrast to *K.B.*, in the instant case the putative father, Wilson, was a party to the action to establish the non-existence of the presumed paternal relationship between Lucas and Quinton. Consequently, Wilson is not free to relitigate the issue of Lucas' presumed paternity at the conclusion of the action. Although the presumption of Lucas' paternity has been affirmatively rebutted and the State now seeks to establish Wilson's paternity, this is still the "same action" under § 210.826.1(2). The five-year statute of limitations applies to all such actions, regardless of the identity of the party seeking to assert the statute as a defense. The State cannot logically receive the collateral estoppel benefit of joining the presumed and putative father in an action to establish the nonexistence of paternity while at the same time receiving the benefit of the longer limitations period for a separate action to establish the paternity of a child with no presumed father.

The original UPA's five-year statute of limitations in § 210.826.1(2) for all actions brought to establish the nonexistence of presumed paternity applies to this case. Quinton was born on August 19, 1984. Therefore, we conclude that the limitations period for this action expired on August 19, 1989.

## IV. Conclusion

Anticipating the possibility that this court may conclude that the five-year statute of limitations would bar this action under the original UPA, the State argues that the amended (1993) statute of limitations (permitting this action to be brought "at any time") applies retroactively to revive this action. The State also argues that the five-year statute of limitations under the prior UPA statute was unconstitutional as a violation of state and federal equal protection guarantees. Since this appeal was submitted to this court, however, the Missouri Supreme Court conclusively rejected both arguments

---

5. The statute is ambiguous as to this question. The literal language of the statute would appear to permit this construction because to say that a child has no presumed father is consistent with the child never having had a presumed father or the child once having had but no longer having a presumed father. However, this construction

presents a problem in cases falling into the latter category, because if the putative father is not bound by the prior adjudication refuting the presumption of paternity, the putative father could argue that, as to him, the child still has a presumed father, making § 210.826.3 inapplicable.

in *W.B. v. M.G.R.*, 955 S.W.2d 935 (Mo. banc 1997). Any further analysis on the part of this court is unnecessary.

The State's action to declare Wilson's paternity of Quinton was an action to declare the nonexistence of a presumed relationship between Lucas and Quinton. We reluctantly conclude that, as such, it was governed by the five-year statute of limitations in former § 210.826.1(2). Because Quinton was born on August 19, 1984, the limitations period expired on August 19, 1989. While the Missouri legislature extended the limitations period for such actions in 1993, that legislative act could not constitutionally revive the cause of action against Wilson.

Judgment affirmed.

LOWENSTEIN and LAURA DENVIR STITH, JJ., concur.