**Heath HARMON, Appellant,**

v.

**Sandra HEADLEY, Defendant;**

**Harry Nitchals, Respondent,**

**Taylor Nitchals, Defendant.**

**No. WD 61068.**

Missouri Court of Appeals,
Western District.

Jan. 28, 2003.

Meryl Lynn Lange, Raymore, MO, for appellant.

James E. Switzer, Clinton, MO, for respondent.

Before JAMES M. SMART, JR., P.J., ROBERT G. ULRICH, and RONALD R. HOLLIGER, JJ.

PER CURIAM.

Heath Harmon appeals the trial court's dismissal of his petition filed under the Missouri Uniform Parentage Act.

### Factual and Procedural Background

On August 10, 2001, Heath Harmon filed a petition in the Cass County Circuit Court alleging that Harmon is the natural father of the minor child Taylor Nicole Nitchals. Harmon requested the court to declare that there is no father-child relationship between the child and the respondent Harry Nitchals and to determine that there is a father-child relationship between Harmon and the child. This appeal arises from the trial court's dismissal of that petition.

During the marriage of Harry Nitchals and Sandra Nitchals, Taylor Nicole was born on July 24, 1995. On December 11, 1997, the couple was legally separated, and final judgment for dissolution of marriage was entered on April 26, 1998. The dissolution court declared the paternity of the child based upon the presumption that Nitchals, as the husband, was the father of

Taylor Nicole. Harry Nitchals did not contest the issue of paternity at the dissolution proceedings. Harmon, the appellant in this case, was not a party to that dissolution action.

### First Declaration of Paternity Petition

On February 5, 1999, Harry Nitchals filed a declaration of paternity petition in the Bates County Circuit Court seeking a declaration that Taylor Nicole was not his child (based on DNA test results) and asking the court to find that Harmon was the father. In that petition, Nitchals joined as defendants: the mother, Sandra Nitchals; the minor child, Taylor Nicole; and Heath Harmon as the putative father. Paragraph eight of Nitchals' petition alleged specifically with regard to Harmon, that Sandra Nitchals had admitted under oath that she had sexual intercourse with Harmon on multiple occasions in the latter part of 1994 and that she is not aware of any individual who could potentially be the father of Taylor Nicole other than Nitchals or Harmon.

Harmon, acting *pro se*, filed a general denial. He further stated that the claim was frivolous and prayed that Nitchals be required to pay his attorney's fees. Sandra Nitchals filed a motion to dismiss on the basis of res judicata and collateral estoppel, in that the child's paternity had been fully adjudicated and declared by the dissolution court. The child's guardian ad litem also argued that the cause should be dismissed based upon the same principles and because it was in the child's best interests. The GAL pointed out that the minor child or the putative father could bring a paternity action, at that point, but that such an action still may not lie if it were not in the best interests of the child.

On June 14, 2000, the Bates County court granted the motion to dismiss, finding that "[i]n the legal separation/dissolution proceeding, Taylor Nicole Nitchals was determined to be the child of Presumed Father [Nitchals] and Mother[.]" The court based its ruling on principles of collateral estoppel and res judicata. The cause was dismissed and no appeal was taken from that judgment by any party.

### This Declaration of Paternity Petition

Over a year later, on August 10, 2001, Harmon filed a petition for declaration of non-paternity and declaration of paternity asking the court to find that he *is* the natural father of Taylor Nicole and that no father-child relationship exists as to Taylor Nicole and the respondent Nitchals. Harmon's petition named all the same parties as had been named in Nitchals' earlier petition. The only difference was the reversal of the plaintiff and defendant roles. In response to Harmon's petition, Nitchals filed a motion to dismiss based upon the principles of res judicata and collateral estoppel. Nitchals argued also that the claim was barred by Rule 55.32, the compulsory counterclaim rule. On January 16, 2002, the trial court entered its judgment and order granting the motion to dismiss. This appeal arises from the trial court's dismissal of that petition.

### Standard of Review

Copies of the pertinent pleadings and the judgment from the earlier Bates County paternity action were attached to the motion to dismiss. For that reason, the motion shall be treated as one for summary judgment and reviewed accordingly, pursuant to Rule 55.27(b).[1] Summary

---

1. Rule 55.27(b) provides:
   If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided

judgment is proper where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 377 (Mo. banc 1993). Here, where there are no disputed issues of fact and the question is purely an issue of law, the standard of review is *de novo. Id.* at 376. The summary judgment must be affirmed if, as a matter of law, it is sustainable on any reasonable theory. *S & P Oyster Co. v. U.S. Fidelity and Guar. Co.*, 865 S.W.2d 379, 381 (Mo.App.1993); *Baker v. Baker*, 813 S.W.2d 116, 119 (Mo.App. 1991).

### Claim Barred by the Compulsory Counterclaim Rule

■ In Harmon's three points on appeal, he attempts to show the inapplicability of the principles of res judicata, collateral estoppel, and the compulsory counterclaim rule, respectively. The compulsory counterclaim is an alternate form by which the courts enforce the principles of res judicata and collateral estoppel. *Beasley v. Mironuck*, 877 S.W.2d 653, 656 (Mo.App.1994). Because we find that the claim is barred by the compulsory counterclaim rule, it is not necessary to address each of his points individually. Summary judgment should be affirmed, regardless of the theory upon which it is based, where such judgment could have been reached under any reasonable and available theory. *McNeill v. Community Title Co.*, 11 S.W.3d 863, 866 (Mo.App. 2000).

The issues in Harmon's petition are identical to the issues raised in the earlier petition filed by Nitchals. The compulsory counterclaim rule states:

> in Rule 74.04, and all parties shall be given reasonable opportunity to present all mate-

A pleading *shall* state as a counterclaim any claim that at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim....

Rule 55.32(a) (emphasis added). Here, this claim arose out of the transaction or occurrence that was the subject matter of the earlier claim. Both actions sought a declaration of paternity as to the same minor child.

■ Failure to assert such a claim results in the claim being barred from being adjudicated in the future. See *Knight v. M.H. Siegfried Real Estate, Inc.*, 647 S.W.2d 811, 813 (Mo.App.1982). "The compulsory counterclaim is a means of bringing together all logically related claims into a single litigation, through the penalty of precluding the later assertion of omitted claims." *Neenan Co. v. Cox*, 955 S.W.2d 595, 599 (Mo.App.1997). Claims and issues which could have been litigated in a prior adjudicated action are precluded in a later action between the same parties or those in privity with them. *Beasley*, 877 S.W.2d at 656 (citing 20 AmJur2d, *Counterclaim, Recoupment, and Setoff* § 13 (failure to file counterclaim is res judicata of relief that might have been obtained thereby); 3 Moore's Federal Practice ¶ 13.12[1] (compulsory counterclaim rule equivalent to res judicata)). As noted, *supra*, pursuant to Rule 55.27(b) the motion is treated as one for summary judgment. Summary judgment is a judgment on the merits, thus res judicata principles do apply. *Williams v. Rape*, 990 S.W.2d 55, 59 (Mo.App.1999).

■ Harmon does not attempt to argue that the claim does not meet the criteria of

> rials made pertinent to such a motion by Rule 74.04.

"aris[ing] out of the transaction or occurrence that is the subject matter of the opposing party's claim." Rather, Harmon's argument is that barring his claim on the basis of the compulsory counterclaim rule is improper because his claim had neither accrued nor matured at the time he was served the pleadings in the prior action. He says this is so because at that time he was unaware that he was the child's father. He argues that the only notice he had of the possibility of his paternity was (1) the allegation in Nitchals' petition (and the attached DNA report) indicating that the DNA testing showed that Nitchals was not the father, and (2) the affidavit of the child's mother that there was no other individual apart from Harmon or Nitchals who could be the father. Harmon contends that, because that case was dismissed after pending only a little over a year, he did not have enough information to proceed with his own counterclaim. He claims he had no opportunity to get his own DNA tested. Therefore, Harmon claims, he was not able in the prior proceedings to bring his own claim of paternity.

### Harmon's Claim Was Matured At The Time Of The Dismissal

"It has been held that a claim falls within the limits of the compulsory counterclaim rule if it has 'matured' at the time of the pleading[,] and for this purpose 'matured' has the same meaning as the word 'accrued' in statutes of limitations." *Port v. Maple Tree Invs., Inc.*, 900 S.W.2d 3, 5 (Mo.App.1995). "Accrued" is defined for purposes of statutes of limitations as "when the damage resulting therefrom is sustained and is capable of ascertainment." *Id.* Accrual has been defined, also, as when "there exists the right of the injured party to bring and maintain a claim in a court of law," and "when it is within claimant's power to prosecute a suit to successful judgment." *Knight*, 647 S.W.2d at 814 (citations omitted).

Harmon's argument that the claim had not matured in the prior paternity proceeding is without merit. The allegations in Nitchals' petition and Harmon's own personal knowledge would suggest that his claim was matured and that he should have attempted to litigate his paternity through a counterclaim in the prior proceeding. We agree with the argument that knowledge of the allegations of the petition, together with knowledge of Mr. Harmon's sexual contact with the mother at or about the time of conception, provided Harmon with "a matured counterclaim capable of ascertainment entitling him to maintain a cause of action to determine his paternity of the minor child." Of course, Harmon also had abundant opportunity to obtain DNA testing because he could voluntarily have arranged to have his own DNA tested and compared to the child's DNA. He also, although he was not the movant on the motion to dismiss, could have advised the court that he had a counterclaim he wished to file because he sought to have himself declared the father of the child. Indeed, the GAL in responding to Mother's motion to dismiss, referred to the fact that the putative father had standing to attack the presumed paternity. Harmon also, had he sought to file a counterclaim, could have appealed the ruling as an "aggrieved" party under § 512.020 RSMo.

Although there may be circumstances under which sound policy would suggest that the counterclaim rule should not be applied,[2] Harmon fails to point out any

---

**2.** Courts have recognized a few exceptions. See, for instance, *Wright and Miller on Federal Practice,* § 1412.

reason that policy would dictate that we should refuse to apply the compulsory counterclaim rule in this case. It is true that the applicable statute provides that "a man alleging himself to be a father ... may bring an action [for declaration of paternity] *at any time...*." RSMo. § 210.826.1 (emphasis added). However, we see no reason that this statutory language was intended to allow an individual to wait for his own convenience to assert a paternity claim when the issue has already been raised in litigation to which he is a party. The public policy values of finality, fairness, and the best interests of the child must be considered where the father has first denied his paternity and now, years later, seeks a declaration of paternity that he is the child's father.

The appellant not only neglected to bring his own paternity claim, but he acquiesced in the dismissal of the action in which his paternity was alleged. He then waited a year to file his own claim. His unexcused delay can certainly be seen as having worked to the disadvantage and prejudice of others affected by this issue, and, significantly, to the child.

■ An overriding concern under the Uniform Parentage Act is the best interests of the child. See *S.--- v. S.---*, 595 S.W.2d 357, 362 (Mo.App.1980) (stating that "the cardinal rule of the case law concerning rights of children in custody and related cases [is] that the best interests of the child are of paramount importance"); see also *Roberts v. Roberts*, 920 S.W.2d 144, 146 (Mo.App.1996) (held that declaration by trial court that minor child born to wife during course of marriage was not child of marriage was not in child's best interest, *"which the UPA was designed to protect"* (emphasis added)).

In this case, the application of doctrine enforcing the finality of litigation is not inconsistent with the best interests of the

child. "As with most issues, finality [in matters of paternity] is of considerable importance[.]" *S.--- v. S.---*, 595 S.W.2d at 361.

### Conclusion

For the foregoing reasons, the judgment is affirmed.