395 F.Supp.2d 830 (2005)
STANDARD INSURANCE COMPANY, Plaintiff,
v.
Maybelle WANDREY, Melissa Kimbrough, Aaron Wandrey, A.W. (I), A.W. (II), and Cater Funeral Home, Inc., Defendants.
No. 2:04 CV 86 DDN.
United States District Court, E.D. Missouri, Northern Division.
April 29, 2005.
Matthew B. Woods, Jonathan D. McQuilkin, Eng and Woods, Columbia, MO, Jay W. Kimmons, Schirmer and Suter, Rex V. Gump, Tatlow and Gump, Moberly, MO, for Defendants.

MEMORANDUM AND ORDER
NOCE, United States Magistrate Judge.
This matter is before the court on the motion of defendant A.W.(I), by and through his Guardian Ad Litem, and defendant A.W.(II) for a protective order (Doc. 42.) All parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332 (diversity of citizenship) and is unchallenged.[1] A hearing was held on April 19, 2005.
The facts surrounding this action relate to the April 2004 death of Keith Wandrey (decedent) (Doc. 1 at ¶ 14), and subsequent claims to his life insurance proceeds.[2] In *831 March 1973, decedent married Carla Green. (Doc. 42, Ex. 1 at ¶ 3.) There were four children born during the marriage to Green: defendant Melissa Wandrey, born January 16, 1974; defendant Aaron Wandrey, born February 1, 1976;[3] defendant A.W.(I), born July 16, 1986; and defendant A.W.(II), born January 22, 1988. (Id. at ¶ 5.).
In October 1989, decedent's marriage to Carla Green was dissolved in the Circuit Court of Randolph County, Missouri. (Doc. 42, Ex. 1.) In the dissolution decree, the court stated that the four aforementioned children were "born of this marriage," and decedent was ordered to pay child support for all four minor children. (Id. at ¶¶ 5, 7.) The dissolution decree also incorporated an October 1989 Property Settlement Agreement (Settlement Agreement) between decedent and Carla Green. (Id., Ex. 2.) The Settlement Agreement acknowledged four children born of the marriage and provided, inter alia, for decedent to pay child support for all four minor children. (Id. at ¶ 2(A).) The Settlement Agreement further required decedent to maintain "his present life insurance policy" in force at the time of dissolution with the "minor children named as sole and irrevocable beneficiaries... until the youngest child is emancipated." (Id. at ¶ 2(D).)
At the time of his death in April 2004, decedent had a life insurance policy in full force and effect for $142,000. (Doc 30, Ex. 1.) On January 7, 1999, decedent executed a designation of life insurance beneficiaries under the policy. In doing so, he designated Maybelle Wandrey as the primary beneficiary and Melissa Wandrey, Aaron Wandrey, A.W.(I), and A.W.(II) as contingent beneficiaries ("Those who will receive benefits if the primary beneficiary(ies) do not survive [the insured],") each in the amount of 25%. (Id., Ex. 2.) Melissa Wandrey, Aaron Wandrey, A.W.(I), and A.W.(II) were referred to as decedent's daughter and sons. (Id.) Melissa Wandrey, Aaron Wandrey, A.W. (I), and A.W.(II) had been designated the primary beneficiaries from September 1989 until January 1999. (Id., Exs. 5 at 5 and 7 at 14.)

The Instant Motion
In her Fed.R.Civ.P. 35 motion for physical examination, Maybelle Wandrey seeks to acquire samples of the DNA of A.W.(I) and A.W.(II) for testing at her expense. She alleges a good faith belief that A.W.(I) and A.W.(II) are not the biological children of decedent. (Doc. 38.)[4] In response, A.W.(I) and A.W.(II) filed the instant motion for a protective order, arguing that ordering them to submit to D.N.A. testing will cause annoyance and embarrassment. (Doc. 42.)
A.W.(I) and A.W.(II) also argue that Maybelle Wandrey has no standing to challenge paternity under the Uniform Parentage ACT (UPA), Mo.Rev.Stat. §§ 210.817-210.852. (Id., Attach. 1 at unnumbered 4-5.) Should Maybelle Wandrey have standing to challenge paternity, A.W.(I) and A.W.(II) argue that she is estopped from challenging the issue as decedent's heir, because the matter was previously adjudicated in the dissolution proceeding and unchallenged by decedent *832 when he was living. (Id. at unnumbered 3-4.) A.W.(I) and A.W.(II) assert decedent did not challenge paternity despite the fact that he had a vasectomy prior to dissolution of the marriage, and that he acknowledged them as his children and paid child support until his death. (Id. at unnumbered 2.)
In response, Maybelle Wandrey argues that the issue of paternity may be a defense to the claims by A.W.(I) and A.W.(II) that they are the children of the decedent and entitled to an equitable distribution of life insurance proceeds. (Doc. 55 at 1-2.) She essentially argues that, while paternity is relevant in the instant action, it is not the issue at hand. Maybelle Wandrey further argues that the presumption of paternity has previously been determined, not the issue of actual, biological fatherhood. (Id. at 3-7.) Accordingly, she argues this action, the dissolution decree, and the Settlement Agreement are sufficiently dissimilar to not preclude her from challenging paternity. (Id. at 3.) Moreover, Maybelle Wandrey argues that she should not be bound by the previous decrees, because she was not a party to the action, the decrees are "void or voidable" and were fraudulently induced, and A.W.(I) and A.W.(II) should not collect under the insurance policy unless they are truly decedent's biological children. (Id.)

Discussion
Fed.R.Civ.P. 35 provides:
Order for Examination. When the mental or physical condition (including the blood group) of a party or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in the party's custody or legal control.
A motion for a protective order is not automatic, a party challenging the issuance of a Rule 35 order may move for a protective order. Fed R. Civ. P. 26(c) provides:
Protective Orders. Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense....
Fed.R.Civ.P. 26(c); see In re Motion to Unseal Elect. Surveillance Evidence, 965 F.2d 637, 641 (8th Cir.1992) ("Courts often guard the confidentiality and privacy interests implicated in discovery by limiting discovery or issuing protective orders.").
A.W.(I) and A.W.(II) argue that the issue of paternity was determined during decedent's marriage dissolution proceeding and cannot be relitigated in this current action under the doctrine of collateral estoppel. "[C]ollateral estoppel (issue preclusion) precludes the same parties or those in privity from relitigating issues which have been litigated previously... [in] a final judgment rendered upon the merits." State ex rel. M.A.F. by Bone v. Shelton, 832 S.W.2d 4, 6 (Mo.App.1992) (internal citations omitted).
In support of their argument, A.W.(I) and A.W.(II) cite P.L.K. v. D.R.K., 852 S.W.2d 366 (Mo.App.1993). In P.L.K., a dissolution decree noted that the child was born during the marriage. Id. at 367. Four years later, the presumed father filed an action seeking to modify the dissolution decree after learning he may not be the *833 father. Id. Blood tests confirmed the presumed father was not the biological father; however, the court set aside these findings upon the mother's argument that paternity had previously been adjudicated and that the father was barred from raising the issue based on the doctrine of collateral estoppel. Id. The child then brought an action to establish paternity and, on this petition, the court declared that the presumed father was not the biological father and ordered the biological father to pay child support. Id. at 368. The court ultimately set aside this decision, because it was not brought within the five year time period set forth in the UPA as it existed during the relevant time period. (Id.)
A.W.(I) and A.W.(II) also rely on Barnett v. Mullen, 125 S.W.3d 896 (Mo.App.2004). In Barnett, the presumed father filed a petition to determine paternity after he had been declared the child's father on a default judgment. Id. at 898. The court found that
It is well established "that a finding or implication of paternity in a divorce or annulment decree, or in an incidental support or custody order, is res judicata on the issue of paternity in subsequent proceedings between the former spouses and that each of them is bound by the prior paternity determination."
Id. (quoting Miller v. Hubbert, 804 S.W.2d 819, 820 (Mo.App.1991)).
In Harmon v. Headley, 95 S.W.3d 154 (Mo.App.2003), a man requested adjudication that he was a child's father and to declare that another man was not the child's father. Id. at 155. The child was born of the marriage and the "dissolution court declared the paternity of the child based upon the presumption that [the husband], as the husband, was the father of [child]." Id. at 155-56. The presumed father later brought an action seeking a declaration that he was not the father of child. Id. at 156. The court concluded he was barred from bringing this claim under the doctrines of res judicata and collateral estoppel as he was determined to be the father during the previous dissolution proceedings. Id. The putative father then brought suit seeking to have his rights declared. Id. at 156. The court ultimately held that the putative father was barred from bringing a paternity action for failing to raise the issue as a compulsory counterclaim. Id. at 157-58.
In Campbell v. Campbell, 741 S.W.2d 294 (Mo.App.1987), the dissolution decree did not expressly find that a man was the child's father. It did, however, provide the man with visitation rights and ordered him to pay child support. Id. at 297. Just prior to the dissolution decree, the man gave testimony to the effect that he was the child's father. Id. The court found that the decree sufficiently adjudicated the issue of paternity and was subsequently binding. Id. at 298.
In support of her position, Maybelle Wandrey cites to Smith v. Smith, 985 S.W.2d 829 (Mo.App.1998). In Smith, a man was determined to be the presumed father in an administrative proceeding. Id. at 835. In a later dissolution action, the presumed father sought a declaration of non-paternity. Id. at 831. The court found that the issue of paternity had already been litigated in the administrative action and declared him the father. Id. The appellate court found that the presumed father was not barred from challenging paternity by the doctrine of collateral estoppel, because the administrative proceeding only determined he was the presumed father, not the actual father. Id. at 835.
In ruling on this matter sitting in diversity, the court is constrained to rule in accordance with established Missouri court precedent and stand in the proverbial *834 "shoes" of the Missouri court. See Donovan v. Harrah's Md. Heights Corp., 289 F.3d 527, 529 (8th Cir.2002) (in a diversity action, the court must look to the rules of decision that the forum state Missouri courts would apply).
In Missouri, challenges to paternity are primarily brought pursuant to the UPA. "The purpose of the UPA [is] to establish a uniform method for determining paternity which would protect the rights of all parties involved, especially the children." Piel v. Piel, 918 S.W.2d 373, 375 (Mo.App.1996).
The UPA, provides that
1. A man shall be presumed to be the natural father of a child if:
(1) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within three hundred days after the marriage is terminated by death, annulment, declaration of invalidity, or dissolution, or after a decree of separation is entered by a court....
Mo.Rev.Stat. § 210.822. The UPA further provides that "[a] child, his natural mother, a man presumed to be his father... a man alleging himself to be a father, any person having physical or legal custody of a child for a period of more than sixty days or the division of child support enforcement" can challenge paternity under the Act. Mo.Rev.Stat. § 210.826.
In this case, Maybelle Wandrey is essentially asking the court to determine the paternity of A.W.(I) and A.W.(II) by exclusion; however, she points to no statutory authority allowing her to challenge paternity. And, as is clear from the statute, Maybelle Wandrey is not a person entitled to bring a paternity action under the UPA. See Mo.Rev.Stat. § 210.826.
Moreover, Maybelle Wandrey has not made a convincing showing that the issue of paternity is "in controversy" as required by Fed.R.Civ.P. 35. Maybelle Wandrey suggests there is some question of the decedent's parentage; therefore, Carla Green (A.W.(I) and A.W.(II)'s biological mother) may have perpetrated some sort of fraud on both the decedent and the Missouri courts in obtaining the Settlement Agreement and dissolution. However, there is no evidence before this court showing whether the decedent or Carla Green were aware that he was not the children's father at the time of the Settlement Agreement and dissolution decree, beyond the fact that the decedent had a vasectomy at some point before the marriage ended.
Missouri law appears well-settled that a dissolution decree establishing a child is born of the marriage sufficiently adjudicates paternity so as to prevent a later challenge. See Barnett, 125 S.W.3d 896; Harmon, 95 S.W.3d 154; Campbell, 741 S.W.2d 294. There is no indication that the decedent was precluded or prevented from bringing a legal challenge at the time of the Settlement Agreement or dissolution decree, or that he sought or intended to bring such a challenge prior to his death. The record is clear, however, that he held himself out as the father of A.W.(I) and A.W.(II), paid child support until his death, and did not challenge the presumption of paternity in a final dissolution decree. These facts are similar to those where Missouri courts have ruled that the doctrine of collateral estoppel bars subsequent challenges to presumed parentage.
To hold otherwise seemingly provides the court with an unrestrained ability to posthumously "disinherit" the presumed children of a presumed parent who did not legally question paternity, held the children out as his own, paid child support until his death, maintained visitation until his death, and agreed to the presumption of paternity in both a separation agreement *835 and dissolution of marriage. Similarly, to allow a subsequent spouse to mount a paternity challenge simply because she was not a party to the original dissolution circumvents the spirit of the UPA and Missouri precedent by allowing a presumed parent, through the subsequent spouse, to avoid court-ordered obligations he himself did not challenge at the time of the order.
Given the intent and purpose of Missouri's UPA, and the long-standing principles of res judicata and collateral estoppel, the court is not persuaded that Missouri courts would find this to be a tenable result. Cf. Orion Finan. Corp. of S.D. v. Am. Foods Group, Inc., 281 F.3d 733, 738 (8th Cir.2002) ("As a federal court, our role in diversity cases is to interpret state law, not to fashion it. Thus, if the state law is unsettled, it is our duty to apply the rule we believe the [state] Supreme Court would follow.").
Accordingly, the court determines Maybelle Wandrey has not made a sufficient showing that she is entitled to a Fed.R.Civ.P. 35 examination to determine if Keith Wandrey is the biological father of A.W.(I) and A.W.(II).
For these reasons,
IT IS HEREBY ORDERED that this court's order of March 14, 2005 (Doc. 44), granting the motion of defendant Maybelle Wandrey (Doc. 38) for the DNA testing of A.W.(I) and A.W.(II) is vacated.
IT IS FURTHER ORDERED that the motion of Maybelle Wandrey for DNA testing of A.W.(I) and A.W.(II) (Doc. 38) is denied.
IT IS FURTHER ORDERED that the motion of A.W.(I) and A.W.(II) for a protective order (Doc. 42) is sustained.
NOTES
[1] Plaintiff Standard Insurance Company is a citizen of Oregon, defendants are all citizens of Missouri, and the amount in controversy exceeds $75,000 (Doc. 1 at ¶ 7). See 28 U.S.C. § 1332.
[2] Plaintiff Standard Insurance Company commenced this interpleader action and deposited its insurance policy death benefits, $142,000.00, plus interest, in the registry of the court. On February 4, 2005, the court discharged plaintiff from further liability in this action. All of the defendants are claimants to this fund.
[3] The paternity of Melissa Wandrey and Aaron Wandrey is not challenged in this action.
[4] The court sustained Maybelle Wandrey's motion for physical examination (Doc. 44), and subsequently stayed execution of the order pending resolution of the instant motion (Doc. 45).